### George C. Wing vs. George Milliken.

Androscoggin.    Opinion February 26, 1898.

*Trover.    Damages.    Tenant in Common.    Agent.    Servant.*

The fact that a plaintiff in an action of trover was tenant in common with others of the property converted, constitutes no legal defense, but is available only in abatement, or apportionment of damage.

In trover it is no defense that the defendant acted as agent or servant of another who is himself a wrong-doer.

The measure of damages ordinarily in an action of trover, is the value of the property at the time of conversion, with interest from the time when the cause of action accrues.

And this rule applies in the present case, where timber was cut from land of plaintiff, and manufactured into spool strips, or squares, which were afterwards converted by the defendant, notwithstanding the lumber thus manufactured had become greatly increased in value on account of the labor bestowed upon it in manufacturing it into spool stock.

The conversion in this case by the defendant was after it was thus manufactured and stacked, and not when the trees were severed from the soil by other parties.

*Cushing* v. *Longfellow,* 26 Maine, 306; and *Moody* v. *Whitney,* 38 Maine, 177, distinguished.

On Report.

The case appears in the opinion.

*J. A. Morrill,* for plaintiff.

*J. P. Swasey and E. M. Briggs,* for defendant.

This was not a willful cutting, and the damages to be recovered, if any, are only the value of the timber before any labor was expended upon it.

In *Wooden Ware Co.* v. *U. S.,* 106 U. S. 432, it was held in an action for cutting and carrying away timber, that the rule was, first, where the defendant was a willful trespasser, the full value of the property at the time and place of demand or of suit brought, with no deduction of his labor, or expense; second, where he is an unintentional or mistaken trespasser, or an innocent vendee from such trespasser, the value at time of conversion; or if the conver-

sion sued for was after value had been added to it by the work of the defendant, the value less the cost of such improvements. *Winchester* v. *Craig,* 33 Mich. 205; *Heard* v. *James,* 49 Miss. 236; *Baker* v. *Wheeler,* 8 Wend. N. Y. 505, (24 Am. Dec. 66); *Baldwin* v. *Porter,* 12 Conn. 484; *Nesbitt* v. *St. Paul Lumber Co.,* 21 Minn. 491; *Powers* v. *Tilley,* 87 Maine, 34.

Sedgwick on Damages, p. 522, 3rd edition: "If the conversion were willful, then the value of articles so increased, would be the rule. But this should never be where the act was in good faith; and in such case, the true rule would be to allow the defendant for whatever value his labor had actually conferred on the property." No notice was ever given defendant of plaintiff's claim, nor any demand proved, before suit brought.

SITTING: PETERS, C. J., FOSTER, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

FOSTER, J. Trover to recover the value of one hundred and fifty thousand feet of sawed birch spool lumber. The lumber in question was cut upon lots 2, 3 and 101, in Franklin plantation, by one George B. Staples who was owner in common with the plaintiff,— the plaintiff's interest being two-thirds undivided of the lots above named. Staples had an interest in other adjoining lands, and the winter's operation amounted to about 1000 cords cut and hauled to Staples' mill in the plantation, and there manufactured into spool strips. It appears that 240 or 245 cords of this amount was cut and hauled from land of which the plaintiff owned two-thirds in common. The cutting by Staples' men upon this land owned in common was unintentional, but wholly without the plaintiff's knowledge or consent.

It is not claimed that there was any conversion by this defendant until it was manufactured into spool stock. There is no testimony that the defendant exercised any dominion or control over the birch until after it had been sawed up and stacked ready for sorting and shipment.

The fact that the plaintiff was tenant in common with others of

the property converted, constitutes no legal defense to this action, and it is available only in abatement, or by apportionment of the damage. *Holmes* v. *Sprowl*, 31 Maine, 73, 76.

The defendant had a contract with Clark & Service of Glasgow, Scotland, to sell them two hundred thousand superficial feet, board measure, of white birch spool bars for export. This company was afterwards reorganized and became incorporated as Clark, Skillings & Co., Limited, and was doing business in Glasgow and in Boston. The new company assumed and signed the contract made by Clark & Service with the defendant. An agent of the latter company by the name of Bryant was sent to the defendant for directions where to find the spool lumber which he was to inspect and bunch under the contract with Clark, Skillings & Co., Limited. The defendant sent him to the place where the lumber was stacked, and put him in charge "to cull it and ship it." Acting as the agent of that company, he inspected, culled and bunched the lumber and took all that was of a quality that complied with the contract which his firm held, amounting in all to 187,627 feet. This agent took his directions from the defendant. It is clear from the evidence that the defendant, when this agent went there, exercised full control and ownership over the spool stock, gave directions what to do, and that prior to that time he had had nothing to do with the lumber.

The testimony further shows that the defendant also sold from the lumber, after it had been culled, to Merrill & Co., of Dixfield, 107,216 feet.

Here then was a conversion by the defendant of the lumber in which the plaintiff had an interest, unless some justification can be shown. No justification is shown by any license or permission from the plaintiff.

It is contended, however, that the defendant was acting as the agent of his brother Charles R. Milliken who had succeeded to the interest of George B. Staples in the birch in which the plaintiff was interested. But if this contention be true, it affords no protection to him. This court has held that in an action of trover, it is no defense that the defendant acted as the agent or servant of

another who was himself a wrong-doer. *McPheters* v. *Page*, 83 Maine, 234. And it is there held that if he has exercised a dominion over personal chattels in exclusion, or in defiance of, or inconsistent with, the owner's right, that in law is a conversion, whether it be for his own or another person's use. *Kimball* v. *Billings*, 55 Maine, 147, 151; *Freeman* v. *Underwood*, 66 Maine, 229, 233. The same doctrine is laid down in other jurisdictions: *Williams* v. *Merle*, 11 Wend. 80; *Coles* v. *Clark*, 3 Cush. 399; *Gilmore* v. *Newton*, 9 Allen, 171; *Courtis* v. *Cane*, 32 Vt. 232. In some of these cases it has been held that an auctioneer, or broker, who sells property for one who has no title, and pays over to his employer the proceeds, with no knowledge of the defect of title or want of authority, is held to be liable for its conversion to the real owner. *Robinson* v. *Bird*, 158 Mass. 357, 360.

The acts of the defendant in reference to this lumber, in causing it to be sorted, culled and bunched, and a large portion of it there-afterwards sold to two different parties by this defendant, consti-tuted acts of dominion and ownership over the same in exclusion, defiance of, or inconsistent with, the plaintiff's interest and owner-ship therein.

Nor do we think from the testimony as reported that the plain-tiff is estopped, by any transactions of his with George B. Staples in relation to the taking of timber from other lands in which they were interested, from maintaining this action against the defendant. From those acts in reference to other logging transactions, even though the plaintiff was interested with Staples therein, there was no such relation of the parties as would authorize any one legiti-mately to infer that Staples was the plaintiff's agent in reference to this lumber in question, and to deal with him as with one clothed with authority, or to be justified in believing that he had authority to make any disposition of it to the exclusion of the plaintiff's rights. The facts reported create no estoppel as against the plaintiff. This property in question was never, through any act of the plaintiff, placed in the hands of Staples, or this defend-ant, as bailee or otherwise, for the purpose of being disposed of,

thereby creating an estoppel against the plaintiff from asserting any rights against a bona fide purchaser.

The only remaining question is in relation to damages.

The defendant's acts of dominion and ownership had reference to the 240 or 245 cords of lumber, notwithstanding he participated in the sale of but two lots,—that to Clark, Skillings & Co., Limited, and to Merrill & Co. The whole was culled in order to obtain the amount which was sold to Clark, Skillings & Co., Limited, and the entire quantity was thereby greatly diminished both in quality and value. The remainder, after these sales, was disposed of by Charles R. Milliken to two other parties.'

The measure of damages ordinarily in an action of trover is the value of the property at the time of conversion with interest from the time when the cause of action accrues. *Washington Ice Co.* v. *Webster*, 62 Maine, 341, 362; *Johnson* v. *Sumner*, 1 Met. 172, 179; *Glaspy* v. *Cabot*, 135 Mass. 435, 440.

In the present case we are unable to perceive any reason for departing from the general rule, and allowing damages only for the value of the birch when severed from the land, as contended by the defendant.

We have given the question considerable attention, and examined the authorities relied upon in support of the proposition set up in reduction of damages, but we feel that the present case is one where any rule other than the value of the property at the time of conversion does not apply.

It has sometimes been held that where timber has been cut by trespassers, and the trespass was involuntary and not willful, the owner should recover his actual loss, and not the increased value added by the trespasser. Such was the case of *Foote* v. *Merrill*, 54 N. H. 490; but that was an action of trespass quare clausum and not an action of trover, and in the course of the opinion the court say that the plaintiff might have maintained replevin for the timber, or he might "have recovered its full value at the time it was carried away by bringing trover."

Another case from the same court is *Beede* v. *Lamprey*, 64 N. H. 510, which was an action of trover by the owner to recover the

value of two hundred spruce logs cut by the defendant and hauled to his mill, and the court in an elaborate opinion held that the measure of damages was the value of the trees immediately after they were severed from the realty, without any increased value added for transporting them to defendant's mill. There the trespass was not willful, and the cutting over on plaintiff's land was by mistake. But it will be noticed that the suit was against the trespasser, and the court say that "the defendant converted the logs by cutting and severing the trees from the land, and the conversion being complete by that wrongful act, their value there represents the plaintiff's loss," and held that the damages must be according to the usual rule in trover, which is the value of the property at the time of conversion and interest after.

The recent case of *Powers* v. *Tilley*, 87 Maine, 34, was an action of trover against a purchaser of sleepers made from trees cut on the plaintiff's land by a trespasser, and by him manufactured into sleepers, and the rule of damages was held to be the value of the sleepers at the time of their conversion by the purchaser, and no deduction was made for the increased value put upon the trees by the labor of the trespasser before conversion by the purchaser.

The case of *Glaspy* v. *Cabot*, 135 Mass. 435, was an action of tort in the nature of trover, and the same rule was applied. In that case the master of a vessel, which had drifted upon a beach in a damaged condition, sold her, without right, to a person, who after repairing her, getting her off, and taking her into port, sold her hull to another person. The action was by the owner against the latter, and the court there held the measure of damages to be the value of the hull at the time and place of conversion, with interest thereafter. And the court there say, as was said by the court in *Powers* v. *Tilley*, supra, that in replevin for the same property any improvements upon it attach to and go with the property replevied to the owner, and that "the rule of confining the damages to the time of the conversion, with interest from that time, has been adopted in our Commonwealth as the most satisfactory; and many difficulties are avoided which arise under any other rule, when the value of the property is fluctuating, or when

the property has been improved in value or changed in form by the wrongful taker after the conversion and before the trial. In the event of successive conversions, if the value of the property at the time of the first conversion were always taken as the test of damages, then it might often happen that a defendant who had subsequently converted the property could be held to pay more than the property was worth when he converted it. The damages caused by one wrong would be measured by those caused by another."

If we examine the earlier decisions in our own state we find no real conflict with the doctrine here enunciated. The case of *Cushing* v. *Longfellow*, 26 Maine, 306, was an action of trespass de bonis for mill logs, and the plaintiff waived the breaking and entering and the cutting, and there it was held, that the measure of damages was the value as it was the moment after they were severed, and that the plaintiff had no right to select any other place than that where the injury was originally done, although he might have replevied the logs at a later stage after they had become more valuable; and the opinion of the court states he "might have demanded them at another place, of one having them there, and in an action of trover have recovered the value of them there." This, certainly, is in accordance with the general rule of damages, the value at time of conversion.

So in *Moody* v. *Whitney*, 38 Maine, 177, which was trover for mill logs cut upon the plaintiff's land by the defendant, and hauled by him two or three miles, the same measure of damages was adopted, it being held that the plaintiff could not recover the enhanced value of the logs without evidence of a distinct conversion after they were hauled, as if the plaintiff had regained possession, and there had been a subsequent conversion by the defendant. In this case the court recognized and approved the general rule, and held that the conversion by the defendant was at the time of his cutting the timber, and therefore the damages were necessarily the value immediately after it was cut, and had become personal property.

The distinction in these cases to which we have referred, and

the case at bar, should be borne in mind,—the time when the conversion by the defendants took place,—and when that is done, and the rule applied, much of the seeming difficulty in the application of the rule vanishes.    The trouble is not in the rule, but in applying it to the facts of each particular case.    Facts which may be held to constitute conversion in one case, may so vary in another as to lead the court to conclude that conversion took place at an entirely different time, and with a material difference, therefore, in the amount of damages to be awarded.

In the case at bar the conversion by the defendant was not when the timber was cut or severed from the realty.    It was not until after the same had been hauled from the land and sawed into spool timber, and this action is brought for converting that lumber after it was sawed and stacked.    Staples who cut the birch from the land was a tenant in common with the plaintiff, not only of the land from which it was cut, but also tenant in common of the birch after it was landed at the mill.    There was no interference by the defendant, nor acts constituting conversion by him, till it was sawed.    The plaintiff might have brought replevin for the same and thereby have acquired the benefit of whatever labor had been bestowed upon it.    Thus cloth made into a garment, leather into shoes, trees squared into timber, and iron converted into bars, may be reclaimed by the original owner in their improved condition.    Viner's Abr. Property, (E) pl. 5; *Curtis* v. *Groat*, 6 Johns. 168; *McLarren* v. *Brewer*, 51 Maine, 402.    The law neither divests him of his property nor requires him to pay for improvements made without his authority.    It is only when the identity of the original material has been destroyed, or its value insignificant compared with the article manufactured from it, that the law is otherwise.    *Wetherbee* v. *Green*, 22 Mich. 311, (7 Am. Rep. 653.)    To say that the owner may retake the property in an action of replevin in an improved state, as all the authorities hold, and yet that he may not, when he sees fit to resort to an action of trover, recover the equivalent in damages, is a subtlety too refined to be adopted in the ordinary affairs of business transactions, and,

as said by STROUT, J., in *Powers* v. *Tilley*, supra, would relieve trespassers from all loss, and would tend to encourage wrong doing.

We are not unmindful that a somewhat modified rule has been laid down by the supreme court of the United States in the case of *Wooden Ware Co.* v. *United States*, 106 U. S. 432, which was an action of trover for ash timber cut from government lands in the state of Wisconsin by willful trespassers, and sold to purchasers against whom the action was brought. But notwithstanding the doctrine thus modified by the court in that case, and as applied to the facts therein stated, we see no reason for departing from the rule so long established and adhered to by the decisions of our own court, and the courts of other states, in the decisions to which we have referred. As said by the court of Massachusetts in *Glaspy* v. *Cabot*, supra, " the general principle is that damage should compensate the plaintiff for what he has lost. The rule confining the damages to the time of the conversion, with interest from that time, has been adopted in this commonwealth as the most satisfactory ; and many difficulties are avoided which arise under any other rule."

From the evidence before us, and with the rule as herein enunciated, we are satisfied that the damages to be recovered by the plaintiff for his two-thirds interest in the property converted, should be $1050.

*Judgment accordingly.*