Decided 21 March, rehearing denied 18 April, 1904.

## HALL *v.* ABRAHAM.

[75 Pac. 882.]

CONSTRUCTION OF MINING AGREEMENT—REVOCABILITY.

1. An agreement by which an owner of a mining claim grants to another an option to purchase it on certain terms, with the privilege of further prospecting and mining thereon during the life of the option, is a license coupled with an interest, and becomes irrevocable when the licensee has taken possession and made expenditures in reliance on it.

CONSTRUCTION OF MINING LEASE.

2. Under an agreement between a mine owner and a prospective purchaser, providing that the grantee may purchase by a stated time, that in the meantime he may prospect and mine on the premises; that all ore found of sufficient richness to be milled and shipped, shall be delivered to the grantor and sold, the "net proceeds" of which shall be applied on the purchase price, the cost of mining such ore should be allowed the grantee in ascertaining the "net proceeds," regardless of the form of action in which the question appears.

From Douglas: JAMES W. HAMILTON, Judge.

Replevin by James Hall against Albert Abraham for certain ore. Plaintiff had judgment and defendant appealed.

REVERSED.

For appellant there was a brief over the names of *Oliver P. Coshow, Dexter Rice,* and *John H. Shupe,* with an oral argument by *Mr. Albert Abraham, in pro. per.,* and *Mr. Coshow.*

For respondent there was a brief over the names of *Frank W. Benson* and *Crawford & Watson,* with an oral argument by *Mr. Benson* and *Mr. Andrew M. Crawford.*

MR. JUSTICE WOLVERTON delivered the opinion.

This is an action to recover the possession of 20 tons of gold-bearing ore. The rights of the parties depend in most part upon the proper interpretation of a certain agreement entered into November 14, 1901, between the plaintiff, James Hall, on the one part, and G. W. Johnson and H. H. McCarthy, on the other, whereby the former gave to the latter an option to purchase certain premises, specifically described, with the privilege, under designated conditions, of prospecting and mining thereon. The defendant claims

through Johnson and McCarthy. The ore was taken from a mine situate upon the premises, through a tunnel entering from the Continental mine, was sorted as mined, and that portion of it fit for milling and shipping put into sacks and stored in bins on the latter mine. That which is in controversy was ready for shipment about May 20, 1902, and the evidence tends to show that the defendant requested plaintiff to sell it, which he refused to do, and that about the 8th of October following the defendant removed it from the place where stored preparatory to hauling it to Myrtle Creek, a railroad station, whereupon this action was instituted to recover possession thereof. It may be added that the ore was subsequently conveyed by defendant to the station, shipped to the Selby Smelting & Lead Company at San Francisco, and milled.

Among other things, the trial court instructed the jury that, in determining the value of the ore, they should not deduct the cost of mining, but should consider the charges for sacking, hauling, freighting, and smelting, which amounts should be deducted from the gross value of the ore at the place where taken, and that the remainder would be the measure of recovery, in case the property could not be found. An exception was saved to this instruction, and the error assigned in pursuance thereof presents the only question that need be considered. The same question was raised by an attempt to show the cost of mining the ore and taking it from the mine, which was not permitted.

1. The agreement in question may be technically characterized as a license coupled with an interest, with an option to purchase; the licensees having gone into possession, performed labor, and made expenditures in pursuance thereof, thereby rendering it irrevocable: *Stinson* v. *Hardy*, 27 Or. 584 (41 Pac. 116); *Clarno* v. *Grayson*, 30 Or. 111 (46 Pac. 426). For brevity of expression, we shall refer to the parties as licensor and licensees. The licen-

sees, having entered, are entitled to the exclusive right of possession during the continuance in force of the agreement. They have an interest in both the realty and the ores produced from the mine, and cannot be divested of either without their consent, except by virtue of the provisions of the agreement itself.

2. By one clause in the agreement it is provided that, if the licensees enter into possession, they shall perform a definite amount of work upon the mine, namely, 730 shifts, on or before the expiration of the contract; a shift being a day's work of 10 hours for one man. By other provisions, they are to forfeit all right, interest, and title to the premises, as well as all sums of money paid, all improvements made, and all work and labor performed thereon, if they fail to pay the full stipulated contract price within one year from the date of the agreement; time being made the essence of the contract. These stipulations are all clearly for the benefit of the owner, as well as designed to insure a substantial exploration and development of the property. It is further provided that all ore, mineral, bullion, and concentrates found on the premises during the term of the lease which may be milled and shipped (that is, which are susceptible of being milled and shipped) shall be sold by Hall, and the "net proceeds" thereof applied on the purchase price. This was evidently for the benefit of the licensees, and the pivotal or cardinal inquiry is, what was intended by the use of the expression "net proceeds"? The possession of all ore when taken from the mine was in the licensees, and it was their right to retain it until the agreement was at an end, except such as was fit for milling, to which the licensor was entitled for the purpose of selling it. In fact, he was not only entitled to such possession for that purpose, but it was his duty to dispose of the ore within a reasonable time after it was produced, and apply the net proceeds to the purchase price

of the property, as required by the stipulation. He had no right to the possession of the ore except for that purpose, and he could not refuse to perform the agreement in this respect until the option expired, and then claim a forfeiture because the entire consideration named was not otherwise paid.

It was manifestly within the expectation of the parties that such a quality of ore would be discovered and taken from the mine as would afford a ready source of profit, and it was intended that the licensees should have the benefit of this to aid them in their purchase. Their labor and outlay would be required to produce it, and, should such expenditures not be deducted from the gross receipts, it is plain that the net profits or proceeds would be larger ; but if, on the other hand, they should be deducted, the net profits would be less. In either event, however, the licensor would be fully protected, and that whether the purchase was completed or not. So, if the labor and outlay were not deducted, the larger would be the amount to apply on the purchase price, and the smaller the final payment to be made to complete the purchase ; but, if they were to be deducted, the reverse would be true, and the amount of the forfeiture would be less or greater accordingly as they should or should not be deducted. Forfeiture is not favored in equity, and the law is not so callous and indurated as to require it unless it is exacted by clear and indubitable intendment. As we have seen, the licensor has stipulated for the doing of a large amount of work upon the premises to insure practical development and exploration of the mine, and has protected himself against depletion thereof. In view of this, can it now be said that it was the intendment of the parties that the licensees should contribute more to the benefit of the licensor, as would probably be the case if their labor and means were in no sense to become a factor in determining the net proceeds of the milling ore?

We have no precedent to guide us, except as we find some cases promulgating an analogous principle. Where a party is suing for damages to his mine, and the defendant is a trespasser through inadvertence, he would be compelled to pay only the value of the ore as it was in the mine, and would be entitled to limit his recovery, first, by the value of what is taken; and, second by the cost of mining and extraction, tramming and hoisting to the surface, or hoisting to the pit's mouth, which would be the value of the ore to the party suing if he were engaged in mining himself, and compelled to stand the expense of producing it: 2 Lindley, Mines § 868. This should be confined to the actual cost of digging or quarrying the particular ore from the particular vein in which it is found, exclusive of the work of running levels, drifts, crosscuts, or explorations, development, or improvement, in discovering or reaching the vein: *St. Clair* v. *Cash Gold M. & M. Co.* 9 Colo. App. 235 (47 Pac. 466). The case of *Colorado Cent. Consol. Min. Co.* v. *Turck*, 70 Fed. 294 (17 C. C. A. 128), involving an action to recover damages for wrongfully extracting silver-bearing ore, is illustrative of the principle. There the trial court instructed the jury, in substance, that the measure of the plaintiff's recovery, provided the defendant was not a willful trespasser, was the value of the ore taken out of the vein, deducting the cost and expense of breaking it and bringing it to the surface or mouth of the mine, with the further injunction that where ore has been broken and taken out by lessees of the defendant company, and the latter has received only a royalty on the ore, the royalty so received might properly be taken to represent the net profit that had been realized by the defendant, which instruction was approved by the court of appeals. In further support of the doctrine, see *Waters* v. *Stevenson*, 13 Nev. 157 (29. Am. Rep.

293); *Fitzgerald* v. *Clark,* 17 Mont. 100 (42 Pac. 273, 30 L. R. A. 803, 52 Am. St. Rep. 665); *Forsyth* v. *Wells,* 41 Pa. 291 (80 Am. Dec. 617); *Ege* v. *Kille,* 84 Pa. 333 ; *Austin* v. *Huntsville C. & Min. Co.* 72 Mo. 535 (37 Am. Rep. 446). The principle being applicable when the damages are the result of trespass occurring innocently, through mistake, but without right, how much more appropriate and suitable would be its adaptation where the property is taken out under a license or positive agreement of the parties concerned ! By arriving at the damages sustained under the rule announced, the mine owner is protected, and at the same time the producer does not lose his labor and expense of mining the product, which is fair to all.

It is so here. The parties, presumably contracting in view of the law upon the subject, intended to provide against damage to the mine by way of depriving it of its milling ore, and at the same time to protect the licensees against the loss of their labor and expense in mining and producing the ore, which, as we have seen, consists in the labor and expense of digging the ore from the vein and bringing it to the surface. This would mark the damage to the mine owner, or the net profits, were the ore sold at the tunnel's mouth. If, however, it is to be shipped and reduced, and the gold and other precious metals extracted, then the expense of sacking, freighting, and milling should likewise be deducted from the gross sum produced, and the balance would indicate the net profits or net proceeds ; the two expressions being synonymous, we may say, in the light in which the latter is employed in the agreement under consideration.

Nor do we think the form of action has any particular bearing upon the subject. During the continuation in force of the contract, the interest of the plaintiff in the ore was special, and he could only demand its possession for the purpose of selling the same and retaining the net

proceeds.  The cost of producing it from the vein or lode must be accounted for to the licensees, or, in this instance, to the defendant, who succeeds them ; the contract defining and fixing the amount of his recovery.  The recovery, therefore should be the same, whether the action be upon the contract for damages, or in the present form for the specific property that the plaintiff has stipulated should be retained by him after sale.

It follows that the trial court erred in the refusal to admit the testimony offered for the purpose of showing the cost of mining the ore from the ledge, and in instructing the jury that they should not deduct such cost from the gross proceeds in arriving at the net proceeds of the milling ore.  In view of these considerations, the judgment of the the trial court will be reversed, and the cause remanded for such further proceedings as may seem proper, not inconsistent with this opinion.                    REVERSED.