CHRIS LAMOREAUX, Respondent, v. JOHN F. RANDALL, as Sheriff of Benson County, North Dakota, Appellant.

(44 A.L.R. 1315, 208 N. W. 104.)

**Trover and conversion — elements of damages — value of property — some case highest market value — expense of pursuit of property; exemplary damages, when awarded.**

1. In a conversion action the plaintiff is entitled to actual compensation for the wrong inflicted on him by the defendant —— that is, he is entitled to full compensation for the injury suffered as a consequence of defendant's tortious conduct. The elements of such injury, under the statutes of this state, are the value of the property at the time and place of the conversion, in some circumstances the highest market value between the date of the conversion and

Note.— (1) Value of property at time and place of conversion as measure of damages, see 26 R. C. L. pp. 1148, 1149; 5 R. C. L. Supp. 1443; 6 R. C. L. Supp. 1587.

the verdict, and the money and the value of the time property expended in pursuit of the property. In addition to the compensation, the plaintiff may be awarded exemplary damages against the wrongdoer when the conduct of the latter has been oppressive, malicious, or fraudulent.

**Trover and conversion — person suing levying officer for conversion of grain in shock is not* entitled to recover value of threshed grain; cost of threshing and hauling grain must be deducted where officer acted in good faith; good faith of tort-feasor when charged with conversion for jury.**

2. Where an officer, armed with an execution, seizes and levies on grain in the shock, and thereafter threshes and hauls it to market, the plaintiff whose third party claim was rejected by the sheriff, is not entitled to recover the value of the threshed grain without deducting from such market value the actual and reasonable cost of threshing and hauling the commodity to market, when the officer acted in good faith, and not in an oppressive, wanton or fraudulent disregard of the rights of the owner. In such a case, the question of the good faith of the tortfeasor is ordinarily for the jury.

**Trover and conversion — defendant entitled to prove expenses in protecting property.**

3. The defendant in a conversion action is entitled to prove expenses reasonable and necessarily incurred in protecting and preserving the property in controversy.

Opinion filed February 25, 1926.

Trover and Conversion, 38 Cyc. p. 2088 n. 33; p. 2092 n. 56; p. 2094 n. 60, 61; p. 2096 n. 65; p. 2102 n. 4, 6 New; p. 2104 n. 18.

Appeal from the District Court of Benson County, *Burr*, J. Reversed.

*Sinness, Duffy & Wheeler,* for appellant.

"It is now so well settled that the gratuitous contribution of a husband's time and skill to the management of his wife's property creates no title to its profits or increase in him that the question is no longer debatable." Olson v. O'Connor, 9 N. D. 511.

"Where the wife sets up a secret contract between herself and her husband, it is improper to charge that contracts made and debts incurred between husband and wife were legal. 'The only difference is that the law requires it should perhaps be looked into a little more closely.'" 27 C. J. 644, note 79D; citing Skellie v. James, 81 Ga. 419, 8 S. E. 607.

"The court should carefully scrutinize all cases of alleged fraud

against creditors, wherein the members of the family of the debtor make claim to important or valuable interests as against creditors." 12 R. C. L. 488, 489.

"Transactions between husband and wife to the prejudice of the husband's creditors will be viewed with suspicion and closely scrutinized to see that they are fair and honest and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of creditors." 27 C. J. 643.

"The reason for this is that the intimate relationship of the parties affords a convenient cover for transactions designed to screen property from creditors." 27 C. J. 644, note 79A.

"The measure of damages for the entire destruction of a growing crop is its value at the time and place of destruction. A similar rule applies in case of the destruction of a matured crop. . . . According to the great weight of authority the amount of loss must be determined as of the time of the injury." Huether v. McCaull-Dinsmore Co. (N. D.) 204 N. W. 614.

"The net loss is all that can be recovered, viz.: the market value of the crop alleged to be lost, over the cost of producing, harvesting, and marketing." Shotwell v. Dodge, 8 Wash. 337, 36 Pac. 254; Smith v. Hicks, 14 N. M. 560, 19 L.R.A.(N.S.) 938; Smith v. Chicago etc. R. Co. 38 Iowa, 518.

*N. J. Bothne* and *W. G. McDonald,* for respondent.

"In an action to recover for the conversion of wheat, the defendant is not entitled to prove the value of his own labor in harvesting and threshing the crop, for the purpose of reducing the damages."

"The general rule in trover is, that the measure of the plaintiff's damages is the value of the property at the time of conversion, without any deduction for labor voluntarily bestowed upon it by the wrongdoer."

"Where possession is unlawfully or fraudulently obtained and the trees or soil severed from the premises and converted by the tenant, the title remains in the owner, and he may recover its value as enhanced by the labor of the wrongdoer." Evans v. Kohn (Minn.) 128 N. W. 1006.

JOHNSON, J. In 1923 the wife of this plaintiff executed a promis-

sory note to Garnaas Brothers; also a chattel mortgage securing the same. Default having occurred, Garnaas Brothers brought suit and recovered judgment on the note and for a foreclosure of the mortgage. Execution apparently was issued on the judgment and returned unsatisfied. These proceedings seem to have taken place in the fall of 1923.

On August 28, 1924, execution on the judgment aforesaid was again in the hands of defendant, the sheriff of Benson county, who levied on and seized a quantity of wheat and oats. The grain had been cut and was standing in the shock at the time of the levy. Soon thereafter the defendant as sheriff, arranged for the threshing of the grain, hauled it to market and sold it. On September 2, 1924, the plaintiff served on the defendant a notice of claim of exemption, reciting therein that *"as husband"* of the judgment debtor, and head of the family, he claimed all the grain seized as exempt, under the statutes of this State. On September 4, 1924, the plaintiff served on the defendant a third party claim to the property which the latter had seized. Plaintiff therein asserted that he farmed the land on which the grain was raised under an agreement with his wife, the judgment debtor and the owner of the land; and that he was entitled to three fourths of the crop under the lease. The sheriff ignored both claims, and threshed and disposed of the grain as heretofore stated.

The plaintiff thereupon brought action in conversion against the sheriff on the theory that the former had leased the land from his wife, and that under the lease he was owner and entitled to the possession of three fourths of the crop. The plaintiff does not ask for a return of the grain, but demands judgment for the "highest market value of the property so converted, between the time of such conversion and the verdict herein." The jury returned a verdict for the plaintiff upon the basis of the highest market value of wheat between the date of the alleged conversion and the trial of the action.

The defendant moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The grounds of the motion, briefly stated, were: the insufficiency of the evidence to support the verdict; errors in admitting or excluding evidence; and misdirection of the jury. The trial court denied the motion and judgment was entered accordingly. The defendant appeals from the order denying

the motion and from the judgment, specifying the same errors on which he relied in the trial court.

One of the alleged errors urged by the appellant, is that the court misdirected the jury upon the measure of damages. The position of the defendant at the trial was, and in this court is, that in no event was the plaintiff entitled to the highest market value of the grain as threshed; that if entitled to recover anything, it was the actual value of the property at the time it was seized, that is, of the grain in the shock; and that the sheriff should have been permitted to prove the reasonable and necessary expenses incurred in threshing the grain and delivering the same at the market. The court took a contrary view and ruled upon the evidence and instructed the jury accordingly. The following instruction, specified as erroneous, fairly presents the view of the trial court on this point: . "The plaintiff is also required to prove the value of the property taken. The property when seized was not threshed. The plaintiff has the right in this case, if you find he is entitled to any portion of the crop, to have the value placed at the highest market price between the 4th day of September and the present time. This means the highest market value of the property seized. Wheat and oats have well defined market values and the testimony introduced shows that the highest market value for wheat, since the time the sheriff took the grain, was $1.70 per bushel; and the highest market value of the oats for the same time, was 43 cents. This is the value of the grain after it is threshed and marketed, at the primary markets." The court then told the jury that the plaintiff could recover if he had established the fact that he leased the land in good faith from his wife.

The theory of the trial court, as it appears in the memorandum opinion, was that the sheriff took the grain unlawfully, over the protest of the plaintiff, in defiance of his rights, and, therefore, at defendant's own risk. The trial court was of the opinion that the sheriff was a trespasser and that the "amount recoverable depended on the innocency of the defendant." The court then says: "Where one adds value to chattels by his own labor and expenditures and does this 'with knowledge of the owner's rights, and in defiance thereof' this value will be recoverable by the plaintiff. In the case at bar, defendant had

knowledge· of the plaintiff's rights.    He acted in defiance thereof."
The court cites 38 Cyc. 2099 in support of this conclusion.

Section 7168, Comp. Laws 1913, defines the measure of damages for
conversion·of personal property, as "the value of the property at the
time of the conversion with interest from that time; or, when the action
has been prosecuted with reasonable diligence, the highest market value
of the property at any time between the conversion and the verdict
without interest, at the option of the injured party; and, a fair com-
pensation for the time and money properly expended in pursuit of the
property."    See Huether v. McCaull-Dinsmore Co. 52 N. D. 721, 204
N. W. 614.

Section 7165, Comp. Laws 1913, prescribes the measure of damages
for wrongs to be "the amount which will compensate for all the detri-
ment proximately caused thereby, whether it could have been antic-
ipated or not."    Section 7145, Comp. Laws 1913, dealing with the
subject of exemplary damages, provides that in a tort action, "when
the defendant has been guilty of oppression, fraud or malice, actual
or presumed, the jury in addition to the actual damages, may give
damages for the sake of example and by way of punishing the defend-
ant."    In Lindblom v. Sonstelie, 10 N. D. 140, 86 N. W. 357, this
court held that the jury should be instructed that exemplary damages
may be assessed .only when oppression, fraud or malice exists.

In the case at bar, the court permitted the plaintiff to recover the
highest market value of the wheat and the oats at the primary market
in Benson county, without any allowance whatever to the defendant
for threshing the crop or hauling the grain to market.    In other words,
the expenses of threshing the grain, certainly essential to putting the
property in marketable condition, are in fact collected from the de-
fendant because of conduct held by the trial court *as a matter of law,*
to have been oppressive, malicious or fraudulent.    We may judicially
notice the fact that it was necessary to thresh the grain and to incur
substantial expense in that connection, in order to convert the shocks
in the field into a commodity having a definite and easily ascertainable
market value.    This·the defendant did, and it is the expense of this
work which the defendant contends he had a right to prove.

There are authorities, some of which are cited by the respondent,
in which expressions may be found, seemingly supporting the con-

clusion of the trial court. We think, however, that the general rule is to the contrary. We are of the opinion that the rule more consistent with our statutes and with our decisions than that which was given the jury in the instructions which we have set forth, is correctly stated in Sedgwick on Damages, vol. 2, 9th ed. § 503, as follows: "But by the prevailing view, the defendant, if he acted in good faith, is allowed the value of his labor; that is, the measure of damages is the value of the property as it was just before the defendant's wrongdoing began."

The rule to be deduced from the authorities is that no deduction will be allowed the defendant for labor or expenditures upon the property converted where the taking or the trespass were unlawful and without a good faith belief that the defendant had a right to the same. That is, if the taking was under an honest claim of right, the mere fact that afterwards it turns out that the taking was unlawful is not always sufficient to justify an award of exemplary damages, or a refusal to permit the defendant to prove the value of his labor reasonably expended upon the property. Strickland v. Miller, 12 Ga. App. 671, 78 S. E. 48; Sedgw. Damages, supra; Sutherland, Damages, 4th ed. § 1131, Comp. Laws 1913, § 7145, supra; 36 C. J. 705.

The plaintiff sues not to recover the property, but for its conversion; he alleges and proves that the conversion took place on August 28, 1924, the date when the sheriff seized and levied upon the shocks of grain. It did not take place when the wheat and oats were sold. He is entitled to actual compensation for the wrong, if any, inflicted on him by the defendant—that is, he is entitled to full compensation for the injury he suffered as a consequence of defendant's tortious conduct. The elements of such injury, under the statutes of this state, are the value of the property at the time and place of the conversion, or the highest market value, in certain cases, and the money and the value of the time properly expended in pursuit of the property. In addition to this compensation, which the law intends shall be the equivalent of the actual damage suffered by him, the plaintiff may be awarded damages against the wrongdoer when the conduct of the latter has been oppressive, malicious or fraudulent. If, in addition to actual compensation, the plaintiff demands punitory damages, he must plead and prove facts, which, if believed by the jury, entitle him to collect a

penalty from the defendant; and upon this point the burden of proof is on the plaintiff. In such a case the jury should be told that damages by way of punishment shall be assessed only when fraud, malice or oppressive conduct exists. Lindblom v. Sonstelie, 10 N. D. 140, 86 N. W. 357.

The defendant's right to prove the expense of threshing and of hauling the grain to market, must be recognized if the test of innocency suggested by the trial court be applied. Concededly, the grain was of greater value threshed and at the primary market, than in the shock and on the farm. The value of the property, therefore, was enhanced by the expenditure of money by the defendant. In such circumstances the defendant may or may not be entitled to prove the expenditure, depending on the circumstances. In a few, but, so far as we can find, very few jurisdictions the plaintiff is permitted to recover the enhanced value of the property converted without regard to the good faith of the wrongdoer. Curtis v. Groat, 6 Johns. 168, 5 Am. Dec. 204; Baker v. Wheeler, 8 Wend. 505, 24 Am. Dec. 66; Robertson v. Jones, 71 Ill. 405, 10 Mor. Min. Rep. 190; Ellis v. Wire, 33 Ind. 127, 5 Am. Rep. 189; Wing v. Milliken, 91 Me. 387, 64 Am. St. Rep. 238, 40 Atl. 138; Stockbridge Iron Co. v. Cone Iron Works, 102 Mass. 80, 6 Mor. Min. Rep. 317; Waymouth v. Chicago & N. W. R. Co. 17 Wis. 567, 84 Am. Dec. 763. We do not believe these decisions to be in harmony with the law governing the measure of damages in this state, the theory of which is manifestly as full compensation to the injured party as it is in the power of fallible tribunals of justice to award him. Ordinarily, certainly in the case at bar, full justice is done when the injured party is given compensation for the value of the property at the time and place of the conversion, without allowing him also the enhanced value when the wrong was not willful, but proceeded from a mistaken, bona fide, belief as to the rights of the tortfeasor. This rule we think is more consonant with reason, and has the support of the great weight of modern authority. Waters v. Stevenson, 13 Nev. 157, 29 Am. Rep. 293, 10 Mor. Min. Rep. 240; Austin v. Huntsville Coal & Min. Co. 72 Mo. 535, 37 Am. Rep. 446, 9 Mor. Min. Rep. 115; Hall v. Abraham, 44 Or. 477, 75 Pac. 882; Ward v. Spadra Coal Co. 168 Ark. 853, 272 S. W. 353; Goller v. Fett, 30 Cal. 481, 11 Mor. Min. Rep. 171. When the conversion is by the oppressive, malicious or fraud-

ulent act of the defendant, the enhanced value may be given as exemplary damages, or, because of his own wrong, the defendant may not show such added value. Beede v. Lamprey, 64 N. H. 510, 10 Am. St. Rep. 426, 15 Atl. 133, and numerous cases therein cited. See also Cooley, Torts, 457, 458, note.

Without reviewing the authorities, which are in conflict and some confusion on this proposition, we think that the rule which commends itself to justice and good sense, and at the same time gives full compensation to the injured party within the purpose and spirit of the law, is that which measures the right of the defendant in this regard by the test of good faith. If the defendant acted in bad faith, without an honest belief as to his rights, and in a spirit of intentional disregard of the rights of the plaintiff, he should not be permitted to show that he enhanced the value of the property subsequent to the date of the conversion. The rule is founded on the idea that one innocent of intentional wrongdoing should not be punished because of an honest mistake as to his rights. See 1 R. C. L. 126–128.

The court, as a matter of law, told the jury, in a peremptory instruction, that the plaintiff was entitled to recover regardless of the labor expended by the defendant in threshing and delivering the crop at the market; that is, on the theory on which the trial court proceeded, it determined, as a matter of law, from the evidence, that the taking was not innocent or under a bona fide claim or color of right. In the circumstances, we think it obvious that giving the plaintiff the benefit of the threshing of the crop is tantamount to allowing him exemplary damages. A prayer for such damages is not included in the complaint, nor do the facts pleaded show plaintiff entitled thereto. We think it very doubtful whether the evidence justifies the inference drawn therefrom by the trial court upon this point. It is putting it mildly to say that the testimony is at least as consistent with innocent as with unlawful or guilty taking of the property; that reasonable minds might draw different conclusions with respect to the good faith of the defendant. In this connection it is worthy of note that when the judgment creditor in 1923, sought to enforce the lien of his mortgage against the crops raised on the land of the mortgagor, he was confronted by a claim, then made by a daughter, that the mortgagor had no interest in the crop because at least a part of it had been raised by the daughter under a

lease of the premises from her mother; and having failed in this manner defeating the judgment creditor's attempt to collect under the note and the mortgage, this same daughter, according to her own testimony, falsely represented to the sheriff that all the grain covered by the chattel mortgage had been sold to other parties in disregard of the instrument. She admitted in the court below that this statement was not true at the time it was made and it appears from the testimony in the case at bar that there was a substantial quantity of grain on the place when she represented that all had been sold. The plaintiff claims that he rented the land from his wife only once or twice before 1924, although she had been the owner for about eighteen years; the wife, however, testifies that her husband leased the land from her all the time except two years, these two years being embraced in the period from 1919 to 1921. The plaintiff asserts that he owned all the work horses and the machinery all the time; on the other hand tax records of the county show that in April, 1924, the horses and machinery were claimed by and assessed in the name of his wife, the owner of the land. Whereas the wife testified at the trial that her husband and her daughter Ella rented the land in 1923, on the 7th of June, that year, she certified under oath, in order to withdraw the land from the hail indemnity tax, that she had no tenant on the land and that she was the owner. She certified on April 12, 1924, under oath, that she was the owner of the land on which the crop was raised, but did not give the name of the tenant, although the blank supplied by the State Hail Department called for that information. In this certificate in the blank, "Interest in Crop" she put the word "all." Plaintiff testified that the lease to him was made "about the first of March," 1924. This is also true of her certificates executed in 1923.

From this very brief reference to some aspects of the testimony, we are satisfied that the trial court was not justified in concluding, as a matter of law, that the taking was not made in good faith and under a bona fide claim of right. The defendant was an officer; he had a valid execution under a valid judgment; relatives of the judgment creditor had previously, in devious ways, attempted, with partial success, to defeat the efforts of the creditor in realizing on his judgment; this time the defendant was confronted by a claim presented by the husband, first that the property was exempt to him "as husband," and not

as owner, and second, that he was the owner of the property under a lease. We think if this question had been fairly and properly submitted to a jury that there is abundant evidence to support a finding that the taking was in the good faith belief that the claim of the plaintiff was spurious and fraudulent; and that the alleged lease was merely a device concocted in the family circle for the purpose of defeating the rights of the judgment creditor.

It is not our purpose, nor is it our province to express any opinion on the weight of the evidence or the credibility of the witnesses; we have adverted to portions of the testimony for the sole purpose of showing that reasonable minds might draw the conclusion that the taking was not oppressive, malicious or in wanton disregard of the plaintiff's rights; but that it was made under a bona fide belief of right. On the theory on which the case was tried, this question should have been submitted to the jury under appropriate instruction as to the law.

It is a rule, from which there is scarcely a dissenting voice in the authorities, that the defendant in a conversion action is entitled to prove "expenses . . . incurred . . . in protecting and preserving the property in controversy." 38 Cyc. 2102. Neither will it be disputed that grain in the shock deteriorates rapidly, due to the action of the elements, of rodents and of birds; and that early threshing is essential to save such a crop from substantial injury. Had the defendant left the grain in the shock, with resulting damage, the plaintiff might well have asserted against him a claim for damages due to his negligence in failing to have it threshed. In short, threshing the grain was not a part of the act of conversion, but was a step which good sense and sound judgment dictated as essential to the full conservation of the value of the crop. An award to the plaintiff upon the basis of the value less the cost of threshing as fully and as nearly compensate him for the actual damage he suffered as it is possible to do in any human tribunal where the fallibility of men necessarily renders their judgments liable to error.

It is not necessary to notice the other errors assigned. The court excluded some exhibits offered by the defendant for the purpose of showing that the lease was not in good faith, but a sham. On these rulings error is assigned. The issue was one of fraud and in the exer-

cise of a sound discretion considerable latitude should be allowed in the investigation, to the end that the jury may be fully advised of all the circumstances. Inasmuch, however, as these questions may not arise upon another trial we deem it unnecessary to notice the assignments.

The judgment is reversed and a new trial ordered.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.