**DECATUR COUNTY AG–SERVICES, INC., Defendant-Appellant,**

v.

**Sylvester YOUNG, Plaintiff-Appellee.**

No. 1–979A236.

Court of Appeals of Indiana, First District.

March 24, 1980.

Rehearing Denied April 24, 1980.

John P. Schuerman, Comer & Schuerman, Osgood, for defendant-appellant.

Larry L. Eaton, Johnson & Eaton, Versailles, for plaintiff-appellee.

ROBERTSON, Presiding Judge.

Decatur County AG-Services, Inc. (Decatur) appeals the judgment in a negligence action brought by Sylvester Young (Young). The trial judge held that Decatur negligently sprayed Young's soy bean crop with insecticide and awarded Young $3,420 in damages.

We affirm.

The facts favorable to the appellee disclose that Young contracted with Decatur in the summer of 1976 for Decatur to aerially apply an insecticide to his eighteen acre soy bean field which was being attacked by grasshoppers. After the spraying, Young detected damage to his crop. As a result of the negligent spraying, the crop's growth was retarded and the field yielded approximately thirty one bushels per acre. Prior to the damage, this particular soy bean field was of above average quality, in fact of exceptional quality, and located on good farmland. The average yield that year for soy bean fields of above average quality in this locality was forty to fifty bushels of beans per acre with many outstanding fields exceeding fifty bushels per acre.

Young harvested his soy beans and stored them in his own storage bins, which had a capacity of eleven hundred bushels. He held the beans for sale until after the planting period the following year, at which time he sold the beans for amounts ranging from $8.86 per bushel to $10.38 per bushel. Young transported the beans from storage to market in his own truck. He explained

that his usual procedure was to store his soy beans until after the next year's planting before selling them. The trial judge found that Young would have realized a yield of fifty bushels of soy beans per acre if his crop had not been damaged. Thus, the difference between the potential yield and the actual yield for the eighteen acres was three hundred and forty two bushels of beans. The court further found that Young was entitled to $3,420 in damages, which was equal to a price of ten dollars per bushel for the lost portion of the crop.

The sole issue on appeal is the propriety of the damages awarded. Decatur asserts that the damages were speculative, excessive, and contrary to law. Decatur bases this claim on three points. First, Decatur challenges the sufficiency of the evidence to support the trial court's determination that Young's undamaged crop would have yielded fifty bushels per acre and therefore, Decatur argues for the application of an alternative measure of damages based upon the rental value of the property. Second, Decatur asserts the trial court erred in determining the value of the lost portion of the crop based upon market prices at the time Young sold his crop rather than the prevailing market price at the time of harvest. Decatur argues that Indiana law requires the determination of value to be made at the time of harvest. Finally, Decatur argues that the trial court erred by failing to consider Young's reduced expenses for cultivating, marketing, and storing his crop, due to the reduced yield, when computing the damage award.

We note that when a case is tried by the court, the trial judge's decision will not be overturned unless it is clearly erroneous. *Young v. Bryan*, (1977) Ind.App., 368 N.E.2d 1; *University Casework Systems, Inc. v. Bahre*, (1977) Ind.App., 362 N.E.2d 155.

■ We find ample evidence to support the trial court's determination that, but for the damage to the crop, Young would have realized a yield of fifty bushels of soy beans per acre. There was evidence introduced indicating the quality of the crop prior to

damage, the quality of Young's farmland, and the yields for comparable crops in the locality. We also note that Decatur's authority for an alternative measure of damages involved a factual situation different than the case at bar. *Jay Clutter Custom Digging v. English*, (1979) Ind.App., 393 N.E.2d 230. In that case, the crop was never planted and so no determination of the crop's quality was possible.

Decatur's second point, that the trial court was bound to determine the value of the damaged crop at the time of harvest, is without merit. Decatur cites *Louisville, N. A. & C. Ry. Co. v. Sparks*, (1895) 12 Ind. App. 410, 40 N.E. 546, to support its view. Our reading of the case discloses that damages for injury to growing crops "should be proved by showing the difference in the value of such crops with and without the injury." 12 Ind.App. at 412, 40 N.E. at 547. There is little other Indiana law on this point and none which precisely describes the method to be used in ascertaining the crop's value. Our review of other jurisdictions discloses that the most prevalent method is to take the difference between the value of the probable crop at maturity and the value of the actual crop at maturity with a deduction for any substantial savings in costs for cultivating, marketing and storing the crop. *See Swenson v. Chevron Chemical Company*, (1975) 89 S.D. 497, 234 N.W.2d 38; *Cutler Cranberry Company, Inc. v. Oakdale Electric Cooperative*, (1977) 78 Wis.2d 222, 254 N.W.2d 234; *Eichenberger v. Wilhelm*, (1976) N.D., 244 N.W.2d 691; *Cross v. Harris*, (1962) 230 Or. 398, 370 P.2d 703.

■ None of these cases limit the time for the determination of a crop's value to the time of harvest. Instead, several approaches are acceptable, including the price which the injured party actually received for his crops. In light of these facts and remembering that the purpose of monetary damages is to compensate the injured party for the loss sustained, *Chew v. Lucas*, (1896) 15 Ind.App. 595, 43 N.E. 235; *Pixley v. Catey*, (1936) 102 Ind.App. 213, 1 N.E.2d 658, we see no error in the trial court determining the value of Young's crop from the

prices he actually received when he sold it. We also note that there was no evidence Young speculated to enhance his damages, but there was evidence that he simply followed his standard marketing procedures. Therefore, the trial judge properly determined the true value of Young's crop: for the judge to have done otherwise would have penalized Young rather than properly compensating him for his loss.

 Finally, we disagree with Decatur's argument that the court erred by failing to deduct any savings to Young for reduced costs. It is proper to reduce the damage award when there has been a substantial savings. *Swenson v. Chevron Chemical Company, supra; Cutler Cranberry Company, Inc. v. Oakdale Electric Cooperative, supra; Eichenberger v. Wilhelm, supra; Cross v. Harris, supra.* The evidence here does not reflect a substantial savings, primarily because Young provided his own storage, transportation, and care for the crops. Therefore, the trial judge's decision to award damages based upon the full market value of the crop is not clearly erroneous.

Judgment affirmed.

NEAL, J., concurs.

RATLIFF, J., dissents with opinion.

RATLIFF, Judge, dissenting.

I respectfully dissent from that portion of the majority opinion which upholds the computation of Young's damages based upon a higher market price realized from storage of his beans for a period of several months after harvest and then selling the beans at an average price of nearly $3.00 per bushel greater than market price at harvest. I do not believe such decision to be consistent with the general rule concerning measure of damages in the case of injury to growing crops. I concur in the statement of the majority that the most prevalent method of ascertaining the value of such a crop "is to take the difference between the value of the probable crop at maturity and the value of the actual crop at maturity with a deduction for any substan-

tial savings in costs for cultivating, marketing and storing the crop." (See majority opinion.) However, I cannot agree that the value at maturity in this case is the value of the crop when actually sold by Young.

There appears to be little authority on this precise issue, but the case of *United States v. 576.734 Acres of Land, etc.,* (3rd Cir. 1944) 143 F.2d 408, is strikingly similar to the case at bar. That case was a condemnation action and involved the question of damages to be awarded for the taking of a growing wheat crop. The taking was on March 23, 1942, and the trial court permitted the lessee to present evidence, over objection, that it was customary for farmers in that neighborhood to hold their grain until January for better prices, and to present evidence as to January, 1943 grain prices. The court held that the admission of such evidence was erroneous. The court then considered the analogy of cases involving tortious destruction of crops, and said at 143 F.2d 409–10:

"An analogy is found in the cases dealing with the tortious destruction of growing crops. The basis of compensation is the value of the unmatured crop at the time it is destroyed. But since it is not customary to buy or sell growing crops as such, no effective market value, in this sense, ordinarily exists. The formula adopted has been to take evidence on the probable yield and value of the crop when harvested at maturity and the cost of further care and cultivation, harvesting and marketing the crop, in order to determine the actual realizable value of the crop when destroyed; or what the crop when harvested would have brought, less the prospective cost of cultivation, harvesting and marketing. In allowing such evidence, many decisions state that the market value of the yield to be considered is the market value 'when', 'at the time' or 'at' maturity or harvesting and gathering of the crop. This limitation is a reasonable one, for, it must be remembered, *the general rule is that the measure of damages is the value of the crops at the time of injury or destruction. Since as a*

*practical matter that value cannot be actually determined, the nearest time thereafter when a market value can be placed upon the crops is considered.* The same limitation applies in the instant case." (Footnotes omitted.) (Emphasis added.)

Although that case was a condemnation action rather than a case of tortious injury to a crop, and, as the court said, was concerned with the value of the property at the time of taking, and not what the lessee might have made as a warehouseman of grain held for favorable market (143 F.2d 410), nevertheless, I believe that the court's discussion of the rule as to measure of damages for tortious destruction of crops correctly states the rule, and that such rule should be applied here.

I am aware of the case of *Lamoreaux v. Randall,* (1926) 53 N.D. 697, 208 N.W. 104, wherein the court stated that sometimes in the case of conversion of crops the measure of damages could be computed upon the basis of the highest market value between the date of conversion and the date of verdict. However, that holding is based upon specific statutory authorization for such manner of computation of damages. No such statute exists here, and *Lamoreaux v. Randall, supra,* is, therefore, not applicable.

Here, we are concerned with the negligent injury of Young's crop, and with fairly compensating him for his loss at the time it was suffered. We are not concerned with what Young might have made, or did make, as a warehouseman of grain held for a more favorable market. I believe that Young's damages should have been computed on the basis of the highest market price obtainable at the time of harvest. I would reverse and remand for recomputation of the damages on the basis which I have indicated and for correction of the judgment accordingly.