## State National Bank of St. Joseph v. John Moran Packing Co., Union National Bank of Chicago et al.

| 68 | 25 |
|----|----|
| 68 | 44 |

| 68 | 25 |
|----|----|
| 168s | 519 |

| 68 | 25 |
|----|----|
| 99 | ² 45 |

1. CORPORATIONS—*Meetings Outside of the State.*—Sec. 20 of Chap. 32, R. S., plainly and explicitly pronounces void the action of the directors of a corporation at a meeting held outside of the State, unless such meeting was authorized or its acts ratified by a vote of two-thirds of the directors, trustees, or officers corresponding to trustees, at a regular meeting.

2. SAME—*Power of Officers to Dispose of Property.*—The president and secretary of a packing company have not, by virtue of their offices, authority to transfer substantially all the property of the corporation to certain creditors by way of preference to them; and the company is not bound by and may avoid such a conveyance.

3. SAME—*May Give Preference to Creditors.*—In this State a corporation, although insolvent, may, by a conveyance of its property, prefer one of its creditors, subject to the same restrictions that apply to individual debtors.

4. ATTACHMENTS—*Invalid Mortgages.*—An attaching creditor secures whatever right his debtor has in and to the property seized, and a mortgage on such property which is void as to the debtor is also void as to the attaching creditor.

5. SAME—*Right of Third Parties to Question a Judgment.*—A de-

fendant in an attachment suit is not bound to contest the truth of the affidavit setting forth the grounds for attachment, and another creditor of such defendant, who knew of and could have intervened in the attachment proceeding, can not question the judgment on that point in another suit regarding the property attached

6. ESTOPPEL—*To Deny Validity of Mortgage.*—Where a mortgage is given, not for anything received by the mortgagor at the time of its execution, or any detriment then suffered by the mortgagee, but to secure a debt that has long existed, the mortgagor is not the recipient of such benefits under such mortgage that he will be estopped to deny the validity thereof.

7. BURDEN OF PROOF—*Is on Creditor Claiming Preference.*—When a creditor comes into court, claiming a preference over other creditors of his debtor, the burden is upon him to establish the validity of the acts under which such claim is made.

**Mortgage Foreclosure.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in this court at the October term, 1896. Affirmed in part, and reversed in part. Opinion filed December 28, 1896.

## STATEMENT OF THE CASE.

This was a suit to foreclose a mortgage brought in the Circuit Court of Cook County, Illinois, by the State National Bank of St. Joseph, the appellant, upon real estate situated in the city of Chicago, owned by the John Moran Packing Company, mortgagor, a corporation, incorporated under the laws of the State of Illinois, doing a packing business at St. Joseph, Missouri.

The Union National Bank of Chicago, and the Atlas National Bank of Chicago, attaching creditors, were defendants. By answer and cross-bill of the former, and by answer of the latter, it was contended that the mortgage was invalid because authorized by only three of the five members of the board of directors of the mortgagor company at a meeting held outside of the State of Illinois. The defendant banks also contended that the John Moran Packing Company was at that time insolvent, and that the giving of the mortgage under the circumstances operated as an unlawful preference which should not be enforced against the later attachment liens, and further contended that the

description of the mortgaged premises was insufficient to convey the premises.

Prior to October 20, 1894, the defendant, John Moran, was the owner of a packing plant situated in St. Joseph, Missouri, which he was then operating, and was also the owner of an equity of redemption in real estate located in Chicago, being the premises in question in this suit. Upon these premises was a trust deed dated March 12, 1892, to William H. Matthews, trustee, securing an unpaid balance of over fifteen thousand dollars. In carrying on his packing business Moran was borrowing from time to time large sums of money from the State National Bank of St. Joseph, the complainant.

In October, 1894, the John Moran Packing Company was incorporated under the laws of the State of Illinois, with a capital stock of one hundred and fifty thousand dollars, the number of shares being 1,500, and the par value of each share $100.

John Moran became and still is president of the John Moran Packing Company, and C. W. Taylor was elected secretary.

Soon after the complete organization of the John Moran Packing Company, John Moran sold and transferred to it his packing plant in St. Joseph, Missouri, together with his entire business there, his bills and accounts receivable, good will, etc., and also his equity in his above described mortgaged premises situated in Chicago, for the nominal sum of $150,000, and the Packing company assumed all his liabilities growing out of the said packing business, including the aforesaid advances made to him by the complainant.

In payment, John Moran received 1,139 shares of stock in the John Moran Packing Company at a valuation of $113,900, and due bills or orders of the company for the remaining $36,100. So far as it appears he continued to own that number of shares at all times since he so acquired them.

Among the liabilities so assumed by the John Moran Pack-

ing Company was an indebtedness to complainant of $50,000 for moneys advanced to Moran as before stated, which became due in November, 1894. On November 8, 1894, two new notes for $25,000 each, payable in three and four months respectively from date, were executed by the John Moran Packing Company to the order of complainant to take up the said indebtedness. These two notes of $25,000 each were indorsed by John Moran, and are the notes secured by complainant's mortgage sought to be foreclosed by complainant's bill.

The mortgage in question was not executed until February following, however.

Among the other liabilities of Moran assumed by the John Moran Packing Company was a contract between John Moran and the St. Joseph Stock Yards and Terminal Company, dated June 25, 1894.

On January 23, 1895, the John Moran Packing Co. entered into an agreement with one C. M. France (a nephew of C. B. France, who was then president of the State National Bank), whereby certain portions of the packing company's packing house, at St. Joseph, were leased to him to be used for the storage of meat products, lard and other products from slaughtered animals, etc., the John Moran Packing Company to warehouse its products, keep said warehouses at the right temperature, etc.; said C. M. France to act as warehouseman, issue warehouse receipts for products stored, furnish all necessary weighers therefor and keep all necessary accounts, all at his own cost and expense; for which he was to be paid $300 per month by the John Moran Packing Company.

Business began under this agreement at once, and the result was that the State National Bank during its continuance advanced the John Moran Packing Company a large amount of money upon warehouse receipts issued by the warehouseman, C. M. France, at various times upon pork products.

These advances upon collateral were entirely distinct from the moneys covered by the two promissory notes of

$25,000 each first mentioned. They were loans of new capital by the State National Bank.

This course of business continued up to the middle of February, 1895. One of the notes for $25,000 to complainant being then past due and wholly unpaid, and complainant demanding security, the company then owing about $160,000, a meeting of the board of directors of the John Moran Packing Company was, after notice to each director, held at St. Joseph, Missouri, on the 18th day of February, 1895. Three of the five members of the board of directors, namely, John Moran, C. W. Taylor and P. Fogarty, were present at the meeting and voted in favor of the following resolution:

"Resolved, that the president and secretary be and they are hereby instructed to execute deeds in the nature of mortgages upon all property of the company situated in this State and in Illinois, for the purpose of securing the payment of two notes, made by this company to the State National Bank on the eighth day of November, 1894, for $25,000 each, and also for the purpose of securing and carrying out the contract with the St. Joseph Stock Yards and Terminal Company, made by John Moran on the twenty-fifth day of June, 1894, assumed by this company, that is to say:"

The resolution sets out *in haec verba*—

A deed from the company to John Donovan, Jr., trustee for the State National Bank, covering all its real estate, and all its machinery, tools and other personal property at St. Joseph, Missouri.

A mortgage by the Packing Company to the same bank upon its real estate in Cook county, Illinois.

A deed by the Packing Company to the St. Joseph Stock Yards and Terminal Company, to secure a contract between the Packing Company and the Stock Yards Company in reference to packing a certain number of hogs per year, this deed also covering the same property in Missouri covered by the foregoing deed to the State National Bank, and being made expressly subject to it.

Also a deed from the Packing Company to the Stock

Yards Company, to secure the same contract, and covering the same property in Cook county which is included in the foregoing mortgage to the State National Bank, and being made subject to said mortgage.

These deeds cover all the property in Illinois and Missouri, being all the assets of the company, except some pork products covered by warehouse receipts which were then held by the State National Bank.

The president and secretary, under the corporate seal, thereupon executed the mortgage sought to be foreclosed by complainant herein, dated February 18, 1895, securing the two promissory notes mentioned, which mortgage was duly acknowledged on the same day, and afterward recorded in the recorder's office of Cook county, Illinois, on February 19, 1895, at 9:55 o'clock A. M.

At the same time the foregoing mortgage was given, the president and secretary, under the corporate seal, executed the other mortgage mentioned in the said resolution, which mortgages were duly acknowledged, and recorded at the same time as complainant's mortgages.

John Moran and wife, on February 16, 1895, also executed a mortgage to the State National Bank to secure the same notes covered by the mortgages from the corporation, conveying certain real estate owned by him and located in Cook county, Illinois, and at the same time executed a mortgage to the St. Joseph Stock Yards & Terminal Company conveying the same premises, to secure the before mentioned contract. These individual mortgages were recorded at the same time as the mortgages from the corporation.

On the same day that the mortgages to complainant and the mortgages to the Terminal company were recorded in Cook county, i. e., on February 19, 1895, but several hours thereafter, the defendant, Union National Bank of Chicago, began an attachment suit in the Superior Court of Cook County, Illinois, against the John Moran Packing Company, upon the ground, as stated in the affidavit for attachment, that defendant had, within two years last past, fraudulently conveyed or assigned its property, etc., and was about, fraud-

ulently, to conceal, assign or otherwise dispose of its property. The writ was levied upon the premises in question and a certificate of levy filed by the sheriff in the recorder's office of Cook county, on the 19th day of February, 1895, at 3:30 o'clock P. M.

On March 25, 1895, a meeting of the board of directors of the John Moran Packing Company was, after notice to all of the directors, held at the general office of the company, at Chicago, Illinois. At this meeting of the board of directors there were present four members of the board, namely, John Moran, C. W. Taylor, P. Fogarty and W. T. Nash. A resolution ratifying and approving the acts and resolutions ordered at the meeting held on February 18, 1895, and directing the president and secretary to execute new deeds upon the same trusts and for the same purposes as the deeds ordered and executed on February 18, 1895, by way of further assurance, was carried by an affirmative vote of three directors, namely, Mr. Moran, Mr. Taylor and Mr. Fogarty. Mr. Nash voted against the resolution.

Acting under this resolution, the John Moran Packing Company, by its president and secretary, and under its corporate seal, executed the mortgage to complainant, dated March 25, 1895, securing the same notes described in complainant's mortgage, dated February 18, 1895, which mortgage was duly acknowledged, received and accepted by complainant without waiving or relinquishing the mortgage first mentioned or the lien created thereby, and was recorded in Cook county, Illinois, on March 26, 1895. This mortgage was also set forth in complainant's bill, and is sought to be foreclosed thereby.

On the same day, and acting under the above resolution, the John Moran Packing Company, by its president and secretary, and under its corporate seal, also executed a mortgage to the St. Joseph Stock Yards & Terminal Company, dated March 25, 1895, securing the same contract mentioned in the former mortgage to it, dated February 18, 1895. This mortgage was also accepted by the Terminal company upon like terms and conditions as complainant's mortgage, and was recorded at the same time.

So far as appears, neither the John Moran Packing Company, its officers, directors, nor its stockholders, ever questioned the validity of the mortgages executed on February 18, 1895, to complainant and to the Terminal company, or questioned the validity of the ratifying mortgages, executed on the 25th day of March, 1895, until the filing of its answer in this case, which contained the following:

"The said John Moran admits that certain instruments, to wit, certain supposed promissory notes and a certain mortgage were executed in behalf of the said John Moran Packing Company, and delivered to the said complainant, to secure a certain supposed indebtedness of said company to the said complainant, but these defendants deny that the said instruments, or either of them, were or are as alleged in the said bill of complaint, and ask that strict proof be had of the same in this court, and they deny that the said Packing company was or is indebted to the said complainant, in the sum alleged in the said bill."

The validity of said mortgages was not called in question, except by the Union National Bank and the Atlas National Bank until after the commencement of this suit.

The attachment suit of the Atlas National Bank was not begun and levied until April 26, 1895, after the execution and delivery of the mortgage given in ratification of the mortgages of February 18, 1895.

After the execution of the mortgages dated February 18, 1895, the John Moran Packing Company continued in possession and control of all of the property which it had mortgaged to complainant, and as late as July 13, 1895, passed a resolution, three directors voting therefor, directing the officers of the company to convey the Chicago premises, *i. e.*, the premises in question in this suit, to the defendant, Walter C. Hately, for $28,000, subject to the Matthews trust deed, and also passed resolutions directing the officers to lease portions of the St. Joseph property to Kate Moran, and to sell and convey certain other property to John Moran. It does not appear that complainant has at any time since it received its first mortgage, up to the present time, had any

interest in the Chicago premises other than its mortgage lien, nor exercised any control over it. Nor does it appear that complainant had any control over the St. Joseph property or any interest therein other than its mortgage lien.

After February 18, 1895, all live stock that was slaughtered by the John Moran Packing Company was purchased for and in the name of C. B. France, president of the State National Bank, with money furnished by him; the live stock was slaughtered by the John Moran Packing Company and placed in cold storage in that portion of the packing plant premises which had been rented to C. M. France as warehouseman, the January before. The packing company from time to time gave C. B. France checks of the John Moran Packing Company countersigned by the warehouseman, in payment of the manufactured product so stored, and such product became the property of the John Moran Packing Company. The warehouseman then issued warehouse receipts to the John Moran Packing Company upon this product, which receipts were by the Packing company put up with complainant as collateral security for additional advances to pay C. B. France, and for other purposes, the Packing company retaining title to the product, and it is to be presumed, disposing of it for its own profit.

This procedure continued until August, 1895, when, the business not proving profitable, the John Moran Packing Company ceased doing business. During all this period the officers of the company continued to receive salaries which were paid by the Packing company.

The attachment suit of the Union National Bank of Chicago, begun on the 19th day of February, 1895, was based upon an indebtedness of $25,483, evidenced by the demand note of the John Moran Packing Company, dated February 18, 1895, for that amount. Personal service was had upon the Packing company, which appeared in the suit in due time and filed a plea, duly verified, denying the grounds of the attachment.

On December 14, 1895, a stipulation was entered into between the Union National Bank and the John Moran

Packing Company, and filed in the attachment suit, wherein it was agreed that the plea to the attachment writ should be withdrawn, and that a judgment be entered therein for the sum of $26,233.76, and that general execution against the defendant issue, and also special execution against the property attached. Judgment was entered accordingly on that day and an execution issued on the 16th day of December, 1895, placed in the hands of the sheriff, and afterward returned "no part satisfied." The John Moran Packing Company also filed a plea to the writ in the attachment suit of the Atlas National Bank of Chicago. That suit is still pending and undetermined.

On December 26, 1895, complainant filed its bill to foreclose, and made the John Moran Packing Company, John Moran, Kate Moran, his wife, Union National Bank of Chicago, Atlas National Bank of Chicago, St. Joseph Stock Yards & Terminal Company, Walter C. Hately and John A. Bunnell, defendants thereto—the said John Moran a defendant as indorser before delivery of the two promissory notes secured by complainant's mortgage, sought to be foreclosed, and the other parties defendants as purchasers, mortgagees, attaching creditors or otherwise, which interests, if any, the bill alleged, accrued subsequent to the lien of complainant's mortgage and were subject and inferior thereto.

Complainant's bill also alleged, among other things, that, under the laws of the State of Missouri, the defendant, John Moran, was liable upon the notes mentioned as a maker, and that under the statute of Missouri, in force at the time of the execution of the notes, eight per cent interest might be contracted for. It also set out the informality of the description of the premises in complainant's mortgage of February 18, 1895, and the execution of the mortgage, dated March 25, 1895, which it alleged was given and accepted by way of ratification and confirmation of said first mortgage without waiving or relinquishing its rights under said first mortgage, and contained the usual prayer for the foreclosure of its mortgages and the sale of the premises.

Answers were filed by the respective defendants, and the defendant Union National Bank, filed a cross-bill. Answers were filed to the cross-bill by complainant and by the defendants except the John Moran Packing Company, John Moran and Kate Moran. Replications were filed to the answers to complainant's bill, and to the answers to the cross-bill.

The answer and cross-bill of The Union National Bank averred that the mortgages dated February 18, 1895, were invalid because authorized by only three of the five directors of the John Moran Packing Company, at a meeting held outside of the State of Illinois, and also because the John Moran Packing Company was at the time insolvent and in failing circumstances, and had determined to turn over its property to its creditors, and that complainant's mortgage was one of a series of deeds, mortgages and bills of sale executed by the president of the company for the purpose of giving preference to complainant, and to himself, as surety upon the notes secured by complainant's mortgage; that the mortgages of March 25, 1895, given by way of ratification, were of no avail because not authorized by two-thirds of the members of the board of directors of the John Moran Packing Company, and because the levy of its attachment writ upon the premises in question had been made prior to the date of ratification.

The Atlas National Bank also contended that complainant's mortgage dated February 18, 1895, and the one dated March 25, 1895, were both invalid because not legally authorized by the board of directors of the John Moran Packing Company.

Complainant contended that its mortgage of February 18, 1895, was valid and given to secure a *bona fide* indebtedness of the mortgagor; that neither the John Moran Packing Company nor its stockholders had ever denied the validity of the mortgage, but on the contrary had ratified it, and were estopped from denying its validity after having received the benefit of the loan secured thereby, and that attaching creditors having no greater rights than the mortgagor were also estopped.

That the mortgage was, at most, not void, but only void-able by reason of· any informality in its execution, and its execution could not be called in question by any one except the corporation or its members, and that the attaching creditors could not take advantage of any mere irregular-ity in the execution of the mortgage.

That the mortgage of February 18, 1895, was legally ratified by the resolution of March 25, 1895.

That the lien of the attachment of the Union National Bank. was released by the stipulation withdrawing the plea in abatement and taking judgment by agreement.

After having obtained judgment against the packing company on December 14, 1895, in the manner stated, the Union National Bank began an attachment suit against John Moran individually, on December 14, 1895, in the Superior Court of Cook County, and levied upon the real estate owned by him individually, located at Chicago, cov-ered by his individual mortgages to complainant, and. to the St. Joseph Stock Yards & Terminal Co., dated Feb-ruary 16, 1895, before mentioned. The basis of this suit was the guaranty by John Moran of the before mentioned indebtedness of the Packing company to the Union National Bank. Judgment by default was taken in February, 1896.

The State National Bank of St. Joseph, the complainant, on December 27, 1895, also filed a bill to foreclose Moran's individual mortgage in the Circuit Court of Cook County, and made John Moran, Kate Moran, The St. Joseph Stock Yards & Terminal Co., and the Union National Bank, par-ties defendant.

In the suit against the John Moran Packing Co., the court found that complainant's mortgage of February 18, 1895, and the mortgage to the St. Joseph Stock Yards & Terminal Co., although prior to the attachment of the Union National· Bank and the attachment of the Atlas National Bank, in point of time, were not executed according to law, were not the deeds of the corporation, and were therefore illegal and void as against said attaching creditors, and should, as against them, be set aside and annulled.

That the respective mortgages to complainant and said St. Joseph Stock Yards & Terminal Co., dated March 25, 1895, were subsequent in point of time to the attachment of the Union National Bank, and were inferior thereto, and that as to the Atlas National Bank they were illegal and void because not authorized by the board of directors of the Packing company, and constituted clouds upon the lien of the Atlas National Bank.

That there was due to the complainant from the John Moran Packing Company, upon its mortgage, the sum of $36,009.16. The defendants, Hately and Bunnell, being only prospective purchasers or tenants, no relief was granted either in their favor or against them.

The premises were directed to be sold by a master in chancery.

Paddock, Wright & Billings, attorneys for appellant; Brown & Pratt, of counsel.

Hamlin, Holland & Boyden, attorneys for John Moran Packing Company, appellee.

Green, Robbins & Honore, attorneys for the Union National Bank, appellee.

Mr. Justice Waterman delivered the opinion of the Court.

Section 20 of chapter 32 of the Revised Statutes, is as follows:

"The by-laws of every corporation shall provide for the calling of meetings of the directors, trustees or other officers corresponding to trustees; and when all such officers shall be present at any meeting, however called or notified, or shall sign a written consent thereto on the record of such meeting, the acts of such meeting shall be as valid as if legally called and notified; provided, that the action of any meeting held beyond the limits of this State shall be void, unless such meeting was authorized or its acts ratified by a vote of two-thirds of the directors, trustees or officers corresponding to trustees, at a regular meeting."

It is urged by appellants that the foregoing statute was enacted for the protection of stockholders exclusively, and is a matter in which the creditors of corporations and the public generally have no interest, and therefore that appellees, as creditors of the John Moran Packing Company, can not be heard to say that the meeting of the board of directors of said company, held outside of the State, was void or irregular.

In determining whether the mortgage sought to be foreclosed in this case is valid and binding, not only as regards the company, but with reference to appellees and all the creditors of said Packing company, it is well to consider separately and in chronological order the proceedings by virtue of which complainant's mortgage has validity, if at all.

The statute under consideration plainly and explicitly pronounces the action of the directors of the Packing company at the meeting held outside the limits of the State of Illinois, at St. Joseph, Missouri, on the 18th day of February, 1895, void, unless such meeting was authorized or its acts ratified by a vote of two-thirds of the directors, trustees or officers corresponding to trustees, at a regular meeting. It is not claimed that such meeting had previously been authorized. The action taken thereat was therefore void, unless it has since been ratified at a regular meeting by a vote of two-thirds of the directors.

It is unnecessary now to discuss whether such action was void as regards the public or the creditors of said company, as it unquestionably was void so far as the company itself was concerned. There can be no doubt that had the directors of the company returned to Chicago on the day following the action had in Missouri, and in the State of Illinois held a regular meeting properly called, that the company, no ratification of the St. Joseph action having been previously made, might have proceeded to rescind and revoke the action of the 18th of February, and to make conveyances in repudiation and annullment of the same, save that perhaps the company might have been bound to restore whatever benefit it had received from the St. Joseph action.

It is beyond question that the mere action of the board of directors in St. Joseph, Mo., was, as regards the packing company, entirely void. If, therefore, the complainant's mortgage has any validity, it is by virtue of something that has taken place subsequent to the St. Joseph meeting.

In obedience to the instructions given at the St. Joseph meeting to the president and secretary, they immediately proceeded to execute to the complainant the mortgage which it is sought in this proceeding to foreclose. It is urged that such action upon their part was within their powers and binding upon the company.

There is some contrariety of opinion as to what the powers of the president of such a company are. Thompson's Commentaries on the Law of Corporations, Secs. 4618–4619; Morawetz on Private Corporations, Secs. 537–539.

In this State it has long been the rule that the president of a corporation is presumed to have authority to transact for the corporation business of an ordinary nature, arising in the routine of affairs, such as custom or necessity has imposed upon the office. Chicago, Burlington & Quincy Ry. Co. v. Coleman, 18 Ill. 297; Smith v. Smith, 62 Ill. 493; Mitchell v. Deeds, 49 Ill. 416.

The instructions given at the St. Joseph meeting were in effect to convey by way of mortgage, substantially all its property, which consisted of a packing house plant in Missouri, and real property in the State of Illinois, amounting in value to many thousand dollars.

We are of the opinion that the president and secretary of such a company as was this, have not, by mere virtue of their offices, authority to transfer substantially all the property of the corporation to certain creditors by way of preference to them, and that the company was not bound by and might avoid such conveyances.

The transaction was not one within the ordinary or usual course of the business of the company; neither was it such as custom has sanctioned, or the ordinary carrying on of business made necessary. Winsor v. Bank, 18 Mo. App. 665; Hyde v. Larkin, 35 Mo. App. 366; McKeag v. Collins, 87

Mo. 164; Hoyt v. Thompson, 5 N. Y. (1st Selden), 320; Bank v. Asheville Furniture Co., 116 N. C. 827; Coke v. National Association, 35 Ill. App. 465.

Up to the time of the attempted ratification of the acts of the St. Joseph meeting and the conveyances made thereunder, the Packing company was not bound by such transfers. The company not being bound by the mortgage to complainant, its attaching creditor secured whatever rights it had in and to the property so seized.

In this State the rights of attaching and judgment creditors are equal to those of *bona fide* purchasers.

The meeting of the board of directors, held in Chicago, on March 25, 1895, at which an attempt was made to ratify the action of the St. Joseph meeting and the conveyances thereunder made, could not divest the Union National Bank of the lien which it had theretofore secured by virtue of its attachment. But there is another objection to such attempted ratification. The statute provides that the acts of a meeting held outside of the limits of this State may be ratified by a vote of two-thirds of the directors at a regular meeting. The meeting at which the attempt at ratification was made, seems to have been regularly called and held, but there was not thereat, in support of such attempt, a vote of two-thirds of the directors. Four out of the five directors were present; three voted for and one against the attempted ratification. So far, therefore, as the action of the St. Joseph meeting, instructing the president and secretary to make the deeds under consideration is concerned, such action was not ratified in accordance with the statute.

As to whether the action of the meeting of March 25th was not a ratification of the act of the president and secretary in making the deeds, is, so far as the rights of the Union National Bank are concerned, immaterial, because its rights were secured long before March 25th.

Undoubtedly, the act of the president and secretary of a company, in executing deeds of its property, may be ratified by mere acquiescence therein for a sufficient length of time, but as the attachment of the Union National Bank

State Nat. Bank v. John Moran Packing Co.

was not made after, but on the same day that the mortgage to complainant was recorded, there was no acquiescence by mere inaction.

A distinction has sometimes been drawn between statutes said to have been enacted for the benefit and protection of stockholders only, and those which are enacted as a matter of public policy. This is commented upon in Beecher v. Marquette Rolling Mill Co., 45 Mich. 103.

If, under the circumstances of this case, such distinction was to be considered, it would seem that the statute before mentioned was created for public purposes, and as a declaration of the policy of this State in respect to corporations. It is manifest that it could make but little difference to stockholders whether a meeting of its directors was held within the limits of this State, or just beyond its border; while public policy might dictate that no action had at any meeting held outside of the limits of this State should be binding unless authorized or ratified by a meeting held within reach of the judicial process of this State.

The John Moran Company can not be said to have been, at the time the attachment of the Union National Bank was made, the recipient of such benefits under the mortgage sought to be foreclosed, that it was then estopped to deny the validity of the same. The mortgage was given, not for anything by the Packing company then received, or any detriment suffered by the complainant; the consideration was a debt that had long existed, and the mortgage was consequent upon the demand of appellant that such debt should be paid or secured.

We have no question of the right of an Illinois corporation to prefer *bona fide* creditors, but when a creditor comes into court, claiming a preference, the burden is upon him to establish the validity of the acts under which such claim is made ; which principle appellant insists upon in the present case, by urging that owing to the action of the Packing company in withdrawing the plea it had filed to test the merits of the attachment proceeding, and thus consented to a deault, and judgment against it upon the attachment issue,

there was such irregularity that it, appellant, is not in this proceeding entitled to contest the truth of the attachment affidavit.    As the attachment was upon property which appellant claimed only to have a valid mortgage upon, we are not prepared to hold that it was ever entitled to contest in the attachment proceeding, the truth of the matters set up in the attachment affidavit.

The Supreme Court in the case of Juillard & Co. v. May, 130 Ill. 87, said:

"The statute giving the remedy by interpleader, is applicable alike to lands and personal property.    The issue, and only issue, there can be upon the interpleader, is upon the affirmative claim of property therein, and when that is decided in favor of the claimant, the court has ample power to see that its own process is not abused by making it the means of selling his property to pay the indebtedness of another for which he is not legally liable.    It is fundamental that no person shall be deprived of property without due process of law, and the court can protect the claimant in the rights of property guaranteed him, without assuming to vacate or change the judgment rendered at a prior term against the defendant in attachment."

As appellant knew of, and could have intervened in, the attachment proceeding, it would seem that if at any time entitled to be heard as to the truth of the alleged grounds for attachment, it should, prior to judgment, have made its contest in the court in which that issue was presented.

The Moran Packing Company was not bound to contest the truth of the affidavit setting forth statutory grounds for an attachment.    On the contrary, it might, before or after the issue of the writ, have voluntarily mortgaged the attachment property to the Union National Bank as security for its claim.

Nor do we think that the lien of the Union National Bank was lost by the withdrawal by the Packing company of its plea and the entry of judgment against it by default.

There was no unreasonable departure from the law, if any, by the attaching creditor.    Waples on Attachment, Sec. 811 (Second Ed.).

As to the attachment by the Atlas National Bank, made April 26, 1895, a month previous thereto, the Packing company, by its president and secretary, in accordance with directions given by the directors of said company, at a meeting held in the city of Chicago on March 25, 1895, had executed another mortgage to appellant, securing the indebtedness to it, which mortgage was on the same day recorded, and which the bill filed in this case seeks to foreclose.

Whatever may be the rule in other States, it is in this well established that a corporation, although insolvent, may, by a conveyance of its property, prefer one of its creditors, subject to the same restrictions that apply to individual debtors.   Gottlieb v. Miller, 47 Ill. App. 588; same case in Supreme Court, 154 Ill. 44;  Blair v. Illinois Steel Company, 159 Ill. 350.

The decree of the Circuit Court holding that the lien acquired by the Atlas National Bank under its attachment, is superior to the lien acquired by appellant under its mortgage executed March 25, 1895, is reversed.

The decree of the Circuit Court holding that the attachment of the Union National Bank has precedence over each of the mortgages executed to appellant, is affirmed, and the decree of the Circuit Court as to all the parties to said foreclosure proceeding, save the Atlas National Bank, is affirmed.

The costs of this court in this case will be taxed, one-half of the same against appellant, and one-half against the Atlas National Bank.

Reversed as to the Atlas National Bank.

Affirmed as to all other appellees.