Bennie RATH, Cleon Streigel, Ray Benson, Russell Folmer and Clarence Johnson, Members of the Capitol Milk Patrons Committee, for themselves individually and for all others similarly situated, Plaintiffs and Respondents and Appellants on Cross-Appeal,

v.

ARMOUR AND COMPANY, a foreign corporation, Defendant and Appellant and Respondent on Cross-Appeal.

No. 8129.

Supreme Court of North Dakota.

July 1, 1965.

Cox, Pearce, Engebretson, Murray & Atkinson, Bismarck, for defendant and appellant and respondent on cross-appeal.

Breidenbach & Milhollan, Bismarck, for plaintiffs and respondents and appellants on cross-appeal.

JAMES MORRIS, Commissioner.

The plaintiff alleges that:

"They are the duly elected and acting members of the Capitol Milk Patrons Committee, elected by the patrons themselves to take charge of and operate on a temporary basis the business known as Capitol Milk Products Company of Bismarck, North Dakota, and that they bring this action on their own individual behalf and on behalf of all other patrons similarly situated."

The defendant is a Delaware corporation, with principal offices in Chicago, Illinois, and a branch in Saint Paul, Minnesota, and is authorized to do business in the State of North Dakota. The nature of the business insofar as it pertains to this case is the manufacture of butter and other milk products.

The plaintiffs allege that on September 26, 1962, they sold and shipped to the defendant 210 sixty-four pound boxes of bulk butter which has an approximate fair market value of $7,400.00 and that

"The Plaintiffs have made repeated demands upon the Defendant for payment of the above referred to butter, but the Defendant has wrongfully and while being guilty of oppression, fraud and malice, refused to pay the Plaintiffs for their property and has converted the property or its proceeds to its own use and as a proximate result thereof the Plaintiffs have been damaged in the sum of Seven Thousand Four Hundred dollars ($7,400) actual and special damages."

The plaintiffs prayed for judgment for both compensatory and punitive damages in the total amount of $9,900.00

"* * * and further that the Court order the aforesaid amount distributed to the entire class of Capitol Milk Patrons as their interest may appear."

The jury rendered a verdict for $7,531.95 actual damages upon which the judgment was entered. It also returned a verdict for $250.00 punitive damages with respect to which the trial court ordered judgment for the defendant notwithstanding the verdict.

The defendant moved for a directed verdict when the plaintiff rested, and renewed its motion at the end of the trial, when both parties rested. The defendant made a timely motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied with respect to actual damages, and granted with respect to punitive damages. The defendant appeals from the judgment and from the order denying the motion for judgment not-

withstanding the verdict. The plaintiffs appeal from the trial court's order insofar as it grants the motion for judgment notwithstanding the verdict with respect to punitive damages.

In 1961, and for some years prior thereto, the defendant had operated in Bismarck, North Dakota, a plant at which were manufactured or processed butter and powdered milk. In November, 1961, the defendant sold its plant to Donald Wadzinski for $90,000.00. The purchaser paid $30,000.00 and gave a mortgage on the plant for $60,000.00. Wadzinski operated the plant until about the middle of September, 1962, under the name of Capitol Milk Products Company. The purchaser made monthly payments to the defendant amounting to about $1,000.00 or $1,160.00 per month. The payments appeared to have been made about the fifteenth of each month. The last payment by Wadzinski was in August, 1962.

During Wadzinski's operation of the plant he bought milk or cream from three hundred or more patrons living within a radius of about fifty miles of Bismarck. In September, 1962, he owed these patrons about $50,000.00, which he was unable to pay. These patron-creditors held a meeting with Wadzinski on the evening of September 17, 1962. At this meeting the patrons elected a "Capitol Milk Patrons Committee," who are named in this action as plaintiffs. Some two hundred fifty patrons were present. The chairman of this committee testified:

"Mr. Wadzinski stood up and said he couldn't pay the farmers, that he would do everything in his power to see if the farmers couldn't get their money back in any way possible, and that he would turn over this business at Capitol Milk so they may run it and operate it and see if there was any way they could possibly take that business over."

Wadzinski confirmed this testimony and it appears that he immediately relinquished control of the operation of the plant to the committee, who operated it from September 17 through the 26. During that period the operation was conducted by Ben Haines, a manager hired by the committee. The expenses of operation were paid by the committee.

The record contains no minutes of the meeting, and all of the negotiations with Wadzinski appear to have been oral. The committee maintained its own bank account, it paid nothing to Wadzinski, and he rendered no services to the committee during the period involved in this transaction. The plaintiff Rath did the hauling of the milk from the farms to the plant, and testified that the milk that he hauled belonged to the farmers and that he had no financial interest whatever in the outcome of this action.

During Wadzinski's operation of the plant, butter was sold and shipped to the defendant at Saint Paul, Minnesota, under the name Capitol Milk Products Company. During the period of operation by the committee, milk furnished by the patrons was processed into butter. The defendant received no notice of the change in the control or method of plant operation. On September 26, 1962, the butter shipment, from whence springs this controversy, originated at the plant, was turned over to Hart Motor Express under a straight bill of lading consigned to Armour Creameries, Saint Paul, Minnesota, the bill of lading being signed, "Capitol Milk Products, shipper, per A. J. Brown." It was accompanied by an invoice, at the top of which was stamped, "Capitol Milk Products Co., 922 Front Street, Bismarck, North Dakota," and recited that there was sold to Armour Creameries at Saint Paul, "210 64 # Boxes Bulk Butter."

At the time the shipment was received the defendant did not know that there had been any change in the management or operation of the Capitol Milk Products Company. It withheld payment for the butter thus shipped for application on the past due payment that Wadzinski owed the defendant

on his note and mortgage. The defendant first learned of the existence of the Capitol Milk Patrons Committee by receipt, on October 5, 1962, of a letter from Mr. Haines, as Acting Manager for the committee, in which he outlined his understanding of the operation in which he was engaged. He said:

"It was the concensus of opinion that as an operating business Capitol Milk might have some value whereas it would have little or no value when shut down. By a unanimous vote the patrons agreed to continue sending him their milk, selling it to themselves and processing it themselves, using the facilities of the Capitol Milk Products Co., managed by the Patrons Committee."

He also outlined the selection of the committee and further said:

"I believe it is fair to state that the patrons would never have continued shipping their milk to Capitol Milk Products and did not intend nor did they in fact sell their milk production to Donald Wadzinski after the 17th of September. The butter which you hold was manufactured solely out of milk shipped after the 17th. It was and is the property of the patrons themselves and owned by them and not by Donald Wadzinski. Accordingly the money which you hold is not payable to Donald Wadzinski nor may it be offset against any debt owed by Wadzinski to you. That money is the property of the patrons themselves and on behalf of the patrons, and their committee, I hereby demand that you make immediate payment of the amount due."

■ The jury was warranted by the evidence in determining that the butter was the property of the patrons, and not Wadzinski. The evidence is in that respect sufficient to sustain the verdict. It was agreed between counsel that the value of the butter was $7,531.95.

The defendant's answer alleges that there is a defect of parties in that the plaintiffs have no capacity to sue and are not proper parties in interest, nor real parties in interest; and further alleges that the court lacks jurisdiction over the subject matter of the action. The defendant's answer also sets forth that the plaintiffs are estopped by their own actions, omissions and ratifications to claim that the butter was the property of the plaintiffs or that the money being withheld is plaintiffs' property. Both of these defenses were preserved before the trial court in the motion for directed verdict and in the motion for judgment notwithstanding the verdict or for a new trial. They are presented to this court in the specifications of error.

The threshold question is whether the plaintiffs are real parties in interest and have capacity to sue. Some novel and difficult questions are presented by these challenges.

The theory that is the basis of plaintiffs' claim to recovery is that the butter which was shipped to and accepted by Armour and Company, having been made from the milk and cream belonging to the patrons, which was processed by the patrons at their expense while they were operating the milk products plant, was their property and they are entitled to the proceeds thereof which is in the hands of Armour and Company and which the Company proposes to apply on Wadzinski's debt.

■ The plaintiffs were authorized by the patrons to operate the plant. However, the record is entirely devoid of any authority on the part of the plaintiffs giving them power to sue or be sued as or on behalf of the patrons. As a committee, the plaintiffs have no such power. However, it is alleged that the plaintiffs bring the action "on their own individual behalf and on behalf of all other patrons similarly situated." There was introduced in evi-

dence a list of patrons, taken from the books of the Capitol Milk Products Company. There were 276 names listed as milk patrons, and 88 as cream patrons, making a total of 364. The plaintiffs Folmer, Johnson and Streigel appear on the list of milk patrons. The plaintiff Ray Benson is not listed, he did not testify in the action, nor is his name mentioned anywhere in the evidence. Thus, it does not appear that he has any interest in the action. The plaintiff Bennie Rath is not listed and his testimony shows that he was an operator of trucks hauling milk, and that he had no interest in the action. Our conclusion is that Rath and Benson are not parties in interest and, therefore, not proper parties to the action. The plaintiffs Folmer, Johnson and Streigel are parties each of whom have a personal interest in the subject matter of the action and are, therefore, personally proper parties in interest and are entitled to maintain a suit for recovery of their proportionate share of the proceeds of the butter from the defendant Armour and Company, unless the defense of estoppel is applicable.

Section 31–11–06, N.D.C.C., provides that:

"When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

■ The effect of this section is to enact into substantive law the equitable principle of estoppel and render it cognizable in both law and equity. Neset v. Rudman, N.D., 74 N.W.2d 826.

■ In Werner v. Werner, 74 N.D. 565, 23 N.W.2d 757, this court said:

"An essential element of equitable estoppel is a representation which may consist of words, acts or silence, believed and relied upon by the party claiming the benefit of the estoppel which induced him to act or refrain from acting, to his prejudice."

The defendant bases its claim of estoppel on the fact that the shipment of butter was made to it in the name of Capitol Milk Products Company, which was the name under which Wadzinski did business with the defendant, and that the defendant had no notice that the butter was actually processed by the Capitol Milk Patrons Committee. The evidence shows that the shipment was billed out by an employee of the committee who was a former employee of Wadzinski, who either was not aware of the true situation or otherwise erroneously used the name of the Capitol Milk Products Company instead of the name of the committee. It is clear that the shipment was not billed out with any intention either to defraud or mislead the defendant. The record is wholly devoid of any evidence indicating that the defendant changed its position with respect to the debt owed to it by Wadzinski because of the error or otherwise suffered injury or disadvantage. Wadzinski's debt, which is the basis of defendant's claim to the right to retain the proceeds of the butter, was a pre-existing one that was secured by a real estate mortgage on the plant. Under these circumstances, the jury having, in effect, found against the defendant on the question of estoppel that was submitted under the court's instructions, we cannot say that the plaintiffs are estopped as a matter of law. Commercial Credit Corporation v. Dassenko, 77 N.D. 412, 43 N.W.2d 299; Baird v. Kottke, 58 N.D. 846, 228 N.W. 214; Yale Oil Corporation v. Sedlacek, 99 Mont. 411, 43 P.2d 887; State National Bank of St. Joseph v. John Moran Packing Co. et al, 68 Ill.App. 25.

Having decided that the plaintiffs Folmer, Johnson and Streigel, as parties in interest in the subject matter, may maintain the action in their own right and behalf, we are faced with the further problem of whether they may maintain the class action for all others similarly situated, that is on behalf of the other patrons as well as them-

selves. Rule 23(a), N.D.R.Civ.P., provides:

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

 Our Rule 23(a) is a verbatim adoption of the federal Rule pertaining to the same subject. A number of other states have either by rule or statute adopted the same, or similar, provisions. The great majority of authority in both the courts and among text writers designate the three types of class suits prescribed in Rule 23(a) as "true," "hybrid" and "spurious." Federal Practice and Procedure, Rules Edition, Barron and Holtzoff, § 562. In all three types of class actions it must appear that the class is so numerous as to make it impractical to bring all of the members before the court and the party or parties appearing for the class must be a member or members of the class claimed to be represented. Moore's Federal Practice, Second Edition, § 23.04 and § 23.05.

 Class suits are of equitable origin. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22. They have had their widest application in equity cases. Here, however, we are dealing with a law action for damages in the nature of a suit for conversion. It is clearly not maintainable as a true class action under Rule 23(a) (1).

 This action, being one for damages both compensatory and punitive, cannot be said to affect specific property within the meaning of paragraph (2) of the Rule under discussion. It cannot be considered a hybrid class action. If it can be maintained as a class action at all it must be under Rule 23(a) (3). It is clear that the right sought to be enforced on behalf of the patrons is several as to each patron but there are involved common questions of law and fact affecting these several rights for which common relief may be granted, though, in the form of judgment for separate and varied amounts. It falls within the classification of a spurious class suit. Oppenheimer v. F. J. Young & Co., 2nd Cir., 144 F.2d 387; McGrath v. Tadayasu Abo, 9th Cir., 186 F.2d 766; Kainz v. Anheuser-Busch Inc., 7th Cir., 194 F.2d 737.

 It is generally held that a spurious class suit is a permissive joinder device. Federal Practice and Procedure, Rules Edition, Barron & Holtzoff, § 562.3. Moore's Federal Practice, 2d Ed., § 23.10(3). As to such a device it may embrace members of a class that have claims for varying amounts of damages. However, when so used it extends only to plaintiffs who become parties to the action. McGrath v. Tadayasu Abo, supra; Oppenheimer v. J. F. Young & Co., supra; Shipley v. Pittsburgh & L. E. R. Co., 70 F.Supp. 870.

Salt Lake City v. Utah Lake Farmers Association, 4 Utah 2d 14, 286 P.2d 773, was a suit by water users of a river against the owners of land adjoining a lake to establish the elevation to which the lake water level could be raised by the obstruction of a river that orginated at the lake. The issues involve individual damage claims of the de-

fendant landowners. Regarding these claims, the court said:

"The individual damage claims of the members of this class are several and not common claims as are their claims for violation of their rights and for injunctive relief previously considered. They are spurious not true representation claims and come under subdivision (a) (3) and not (a) (1), of Rule 23 quoted above. These claims are here only because they arise out of a common violation of the common rights of a class of persons to which defendants belong. Such individual damage claims cannot be litigated by representation, they can only be litigated if the claimant is or becomes a party to this action, for such claims are dependent on individual factors not common to all members of the class and the defendants simply do not represent the other members of the class as to such individual claims. As to such claims a representation class action is merely permissive or an invitation to intervene in the action in the interests of cleaning up a litigious situation and preventing a multitude of actions, by litigating many several claims arising out of a common breach of the common rights of the member of a class."

The plaintiffs claim the right to share in the proceeds of the sale of the butter in proportion to the amount of the debt owed to each of the patrons by Wadzinski. A list of the patrons and the amount of the debt owed to each is in evidence. Only three of the patrons appear to be actual parties to the action. The defendant challenges the right of the named plaintiffs to maintain the action. The three patron plaintiffs, Folmer, Streigel and Johnson, have pleaded a cause of action in their respective individual rights, and as such are entitled to maintain the action as real parties in interest and proper parties plaintiff. We think that they have established that they are members of a class each of

whom has a right to recover damages in some amount from the defendant, and the right of recovery will be determined by common questions of law and fact affecting the several rights of the members of the class. It is true that the amounts which members are entitled to recover varies, but, as we have pointed out, this is not fatal to the use of a spurious class suit as a medium of recovery. However, it does require the intervention or joinder of each member in behalf of whom judgment is rendered.

The judgment that was entered decides:

"IT IS ORDERED AND ADJUDGED that the Plaintiffs recover of the Defendant total damages of Seven Thousand Nine Hundred Seventy-one dollars and Nine cents ($7,-971.09), and their costs and disbursements * * *"

followed by a statement of the amount of costs and the total judgment. There is no reference in the body of the judgment to the respective interests or capacities of the plaintiffs. The judgment, in the form in which it is entered, must be and is set aside. Two of the plaintiffs are not parties in interest or proper parties to the action. On the other hand, the three patron plaintiffs are proper parties in their individual capacities and are also proper parties to maintain the spurious class action in behalf of other patrons similarly situated. This means that a judgment notwithstanding the verdict should be entered against the plaintiffs Rath and Benson. The defendant, however, is not entitled to a judgment notwithstanding the verdict with respect to the other three plaintiffs either as individuals or as representatives of the class consisting of other patrons.

Beadle v. Daniels, Wyo., 362 P.2d 128, involved a spurious class action in which a number of the members of the class represented were not before the court. The problem before the court was somewhat

similar to the one facing us here. We quote from the opinion in that case:

"It has been held that the judgment in the 'spurious' type class of action is not binding as in the 'true' class action, upon the entire class. It binds only those actually before the court. If parties voluntarily come in as interveners under the plaintiff's complaint, they would be bound under the rules of *res judicata*, but if such parties refuse or neglect to enter the suit, preferring to institute their separate suits, the judgment cannot be held to bind them. [Citations omitted.]

"Since this case relates to the enforcement of rights which are several but grow out of common questions of law and fact, it is a spurious class action and the doctrine of *res judicata* will apply only to those who are before the court. Apparently both the present plaintiff and defendants know the names and perhaps the whereabouts of those persons who were interest holders at the time of the transaction complained of, and also what assignments of interest have been made since that time. It would therefore have been proper if the trial court at an appropriate time, perhaps at pretrial conference, had made inquiry and thereafter caused proper notice to be given to all of the real parties in interest. This omission is not irremediable and notice should now be given. Those interest holders who express a desire to intervene should be allowed to do so during a time and under circumstances which the trial court deems to be reasonable."

■ In the case before us the defendant has moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Three of the named plaintiffs have claimed that the defendant converted to its own use these plaintiffs' shares of the proceeds of the sale of the butter shipment. It is clear that the jury so found, but because of the form of the verdict submitted to the jury and the uncertainty with respect to the evidence as to the specific amount to which the plaintiffs were entitled, the verdict rendered was not in such form that the court can determine the amount of the judgment to be rendered. The evidence is in this respect insufficient.

In Vaux v. Hamilton, N.D., 103 N.W.2d 291, paragraph 5 of the syllabus by the court, it is said:

"Where, on appeal from a judgment and from an order denying motion for judgment notwithstanding the verdict or for a new trial, the evidence does not sustain the allegations of the complaint, the appellate court need not order judgment for the defendant but will order a new trial when it appears that the defects may be remedied upon a new trial."

We would also point out that in Section 28–27–29, N.D.C.C., it is said:

"Upon an appeal from a judgment or order, the supreme court may reverse, affirm, or modify the judgment or order as to any and all of the parties, and if necessary or proper, may order a new trial of the entire cause or of some specific issue or issues, and if the appeal is from a part of the judgment or order, may reverse, affirm, or modify it as to the part appealed from."

The appeal by the defendant in this case is from an order denying the defendant's motion for judgment notwithstanding the verdict and from the judgment which awards the plaintiffs compensatory damages.

Section 28–27–29.1, N.D.C.C., in part provides that:

"On appeal from an order made upon a motion in the alternative for judgment notwithstanding the verdict or for a new trial the court shall review the whole order and may reverse, affirm,

or modify the order as to any and all parties."

We now come to the alternative motion for a new trial. When we consider that this action was pleaded as a class suit and that the evidence shows a cause of action exists in favor of the class of which the three patron plaintiffs are representative members whose interests are such that a spurious class action may be maintained but the represented members are not before the court and the evidence is not sufficient to permit a determination of the precise interests of each member we are impelled to conclude that a new trial must be had on the issue of the amount of compensatory damages to which each patron plaintiff is entitled, for it appears that the defects in evidence may be supplied on a new trial. Furthermore, a new trial will afford an opportunity to permit patron members of the class to intervene as parties plaintiff.

 The trial court granted the defendant's motion for judgment notwithstanding the verdict with respect to the award of $250.00 punitive damages. The plaintiffs appeal from that part of the order.

Section 32-03-07, N.D.C.C., provides that for breach of an obligation not arising upon contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to actual damages, may award punitive damages for the sake of example and by way of punishing the defendant. In Lamoreaux v. Randall, 53 N.D. 697, 208 N.W. 104, 44 A.L.R. 1315, which was a conversion action, this court pointed out that, with reference to the recovery of punitive damages, the burden of proof is on the plaintiff and the jury should be told that damages by way of punishment shall be assessed only when fraud, malice or oppressive conduct exists. Citing Lindblom v. Sonstelie, 10 N.D. 140, 86 N.W. 357. In this case the trial court evidently found that as a matter of law none of these three elements existed.

Through an error of plaintiffs' employees, the shipment was billed and invoiced in the name of Capitol Milk Products Company, instead of Capitol Milk Patrons Committee. The defendant contends that it can apply the proceeds on the debt of Wadzinski, who was doing business with the defendant as Capitol Milk Products Company. We conclude that the jury was warranted in determining that the butter was the property of the patrons and, therefore, the proceeds belong to them. The withholding of the proceeds by the defendant is, at most, but a technical conversion that arose out of a mistake that had its inception in acts of plaintiffs' employees, and we agree with the conclusion that the trial court must have reached in granting defendant's motion with respect to punitive damages, that the transaction is not tainted with oppression, fraud or malice, actual or presumed, on the part of the defendant. The trial court's order granting that portion of the defendant's motion for judgment notwithstanding the verdict awarding plaintiffs $250.00 punitive damages, is affirmed.

It is our further determination that (1) the defendant is entitled to a judgment notwithstanding the verdict against the plaintiffs Rath and Benson; (2) a new trial is granted as to the plaintiffs Folmer, Streigel and Johnson in their own behalf and in behalf of all others similarly situated who intervene in the action pursuant to the order of the district court; and (3) the district court is directed to provide, by order, for notice to be given to patrons of their right to intervene in the action within such reasonable time as may be determined by the court and for the manner of service thereof.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion. Costs to abide the event.

PER CURIAM.

The foregoing opinion by the Honorable JAMES MORRIS, a retired judge and duly

appointed and qualified Commissioner of the Supreme Court, is adopted and made the opinion and decision of the Court.

BURKE, C. J., and TEIGEN, STRUTZ, and ERICKSTAD, JJ., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case did not participate.