ETS–HOKIN & GALVAN, INC.,
Appellant,

v.

MAAS TRANSPORT, INC., and B. L. Lawrence, d/b/a Lawrence Transportation, Appellees.

No. 18628.

United States Court of Appeals
Eighth Circuit.

July 11, 1967.

Frank J. Magill, of Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, N. D. for appellant.

Frank F. Jestrab, of Bjella, Jestrab, Neff & Pippin, Williston, N. D. for appellees. Fred C. Rathert, and Dean Winkjer, of Rolfstad, Winkjer, Suess & Herreid, Williston, N. D. were with him on the brief.

Before MEHAFFY and GIBSON, Circuit Judges and STEPHENSON, District Judge.

STEPHENSON, District Judge.

This action was instituted by Maas Transport, Inc. (Maas) against Ets-Hokin & Galvan, Inc. (Ets-Hokin) for transportation charges of $90,990.75 arising from services rendered by Maas from August 31, 1962 to March 5, 1963. B. L. Lawrence, d/b/a Lawrence Transportation (Lawrence) subsequently intervened in the lawsuit as a party plaintiff and joined Maas in seeking compensation of $90,990.75.[1] Jurisdiction exists by diversity of citizenship and involvement of the requisite jurisdictional amount. 28 U.S.C. § 1332. After a non-jury trial in the district court, pursuant to Federal Rule of Civil Procedure 52, judgment was entered in favor of Maas and Lawrence for the full amount sought.

During May 1962, Ets-Hokin contracted with the Air Force for the installation of approximately 1,500 miles of buried cable for the missile complex near Minot, North Dakota. This cable was manufactured in Bonham, Texas and then shipped to certain railheads near Minot. After obtaining the installation contract, Ets-Hokin entered into negotiations with various carriers for the purpose of obtaining an agreement concerning, primarily, the transportation of the cable from the railheads to the point of installation. Maas was one of the carriers involved in negotiations with Ets-Hokin at this time. Maas was ultimately awarded the cable transportation and, on August 31, 1962, the cable hauling was commenced. Maas continued to transport cable until March 5, 1963 when its services were terminated. The controversy herein arises out of a dispute as to the compensation to be awarded Maas and Lawrence for services performed during this period.[2] Maas contends that the transportation services were performed under an express oral contract providing for compensation in accordance with the hourly rate set forth in its intrastate tariff on file with the North Dakota Public Service Commission. On the other hand, Ets-Hokin denies the existence of such an express oral contract and further contends that even if such a contract existed, it would be illegal and unenforceable.

The trial court herein found that during the negotiations between Maas and Ets-Hokin regarding transportation services, the former submitted an oral offer to perform the desired transportation services at an hourly rate. The court further found that Ets-Hokin accepted this offer when it instructed Maas to commence hauling operations—there-

---

1. Maas and Lawrence stipulated in the trial court that any judgment to be entered in this matter may and should be entered in their favor jointly.

2. There is a dispute regarding the business relationship of Maas and Lawrence. Ets-Hokin contends that the two companies were involved in a joint venture while both Maas and Lawrence urge that they had merely entered into a leasing arrangement. There is ample evidence in the record to support the trial court's conclusion that "the Intervening plaintiff was a common carrier, who had leased his equipment to the plaintiff for use in the installation of the communications system."

by finding that an express oral contract based on an hourly rate of compensation existed between Maas and Ets-Hokin. In considering a trial court's factual determinations, due regard must be given to the opportunity of the trial court to evaluate the credibility of the witnesses. Such factual determinations should not be set aside on appeal unless the Court of Appeals determines that they are clearly erroneous. General American Life Ins. Co. v. Yarbrough, 360 F.2d 562 (8th Cir., 1966). After reviewing the record in this matter, the Court finds, that there is substantial evidence supporting the trial court's determination that an express oral contract for transportation services existed between Maas and Ets-Hokin and that compensation was to be based on the hourly rate set forth in Maas' North Dakota intrastate tariff. The trial court's determination on this point is affirmed.

■ Ets-Hokin further contends that even if an express oral contract based on an hourly rate existed, it was illegal and thus unenforceable. Ets-Hokin premises its contention upon the fact that a three judge federal court previously rendered a decision that the truck movement of cable manufactured in Texas from the railheads located in North Dakota to the installation point near Minot, North Dakota was interstate commerce since the movement was a portion of the transportation of the cable from Texas to its ultimate destination. Great Northern Ry. v. Thompson, 222 F.Supp. 573 (D. N.D.1963). It is thus now apparent that Maas was engaged in interstate commerce in hauling the cable from the railheads to installation points.[3] In this con-

nection, the trial court found that Maas did not, "at the critical time, have or rely on any applicable interstate tariff." This finding is not disputed by Maas. It is thus obvious that in hauling the cable pursuant to its agreement with Ets-Hokin, Maas was in violation of federal laws governing interstate commerce. See 49 U.S.C. § 301 et seq. Ets-Hokin urges that this violation renders any express oral contract it may have had with Maas illegal and, thus unenforceable. We disagree.

■ A contract in violation of a statutory provision generally is void or illegal only if the legislative body enacting the statute evidences an intention that such contracts be considered void or illegal. See, e. g., McCullough Transfer Co. v. Virginia Sur. Co., 213 F.2d 440 (6th Cir. 1954); Macco Const. Co. v. Farr, 137 F.2d 52 (9th Cir. 1943); Guffey-Gillespie Oil Co. v. Wright, 281 F. 787 (8th Cir. 1922); Talco Capital Corp. v. Canaveral Int'l Corp., 225 F.Supp. 1007 (S.D. Fla.1964); 17 C.J.S. Contracts § 202 at p. 1007 (1963). Otherwise, even though the parties to a contract may be subject to a statutory penalty as the result of performing a contract, the contract itself remains in full force and effect. In the instant case, Maas was in violation of the Motor Carrier provisions of the Interstate Commerce Act when it transported cable under its contract with Ets-Hokin and was subject to penalties for such violations. The cable transportation contract itself, however, would be void, illegal or unenforceable only if Congress, in passing the Motor Carrier provisions of the Interstate Commerce Act, intended that contracts resulting

---

3. The decision finding the cable transportation to be of an interstate character was not rendered until after Maas ceased hauling cable on this particular operation. There is evidence in the record indicating that at the time Maas was conducting the hauling operation, the parties to the agreement believed that the hauling operation was of an intrastate character. Contrary to the contract under consideration in Empire Box Corp. v. Willard Sulzberger Motor Co., 104 F.

Supp. 762, 765 (D.N.J.1952) (cited by Ets-Hokin), the contract between Maas and Ets-Hokin was clearly not designed to evade the motor carrier provisions of the Interstate Commerce Act. It should also be noted that Maas later filed a tariff, identical to the intrastate tariff, with the Interstate Commerce Commission. This interstate tariff became effective November 8, 1962 which was during the progress of the work under the contract.

in violations of that portion of the Act be illegal and void. A review of the statutory provisions involved herein reveals no congressional intention to make contracts in violation thereof void or illegal.[4] The contract between Ets-Hokin and Maas was valid and enforceable.

Appellant further contends that:

"The court erred in the following conclusion of law (R. 491): 'that by the terms of the contract, plaintiff's services were subject to termination by defendant at any time upon notice, and that any inefficiencies which might have existed in the plaintiff's performance under the contract were waived by knowingly acquiescing in the continued performance by plaintiff' (This assigned error covers like errors in conclusions of law 3–6, R. 492.)[5]" Brief for appellant p. 55.

■ This being a diversity action, the law of North Dakota governs the estoppel issue. James Talcott, Inc. v. Associates Discount Corporation, 302 F.2d 443, 446 (8th Cir. 1962); Kelly Tire Service, Inc. v. Kelly-Springfield Tire Co., 338 F.2d 248 (8th Cir. 1964). In Rath v. Armour and Company, 136 N.W.2d 142, 148 (N.D. 1965) the Supreme Court of North Dakota reviewed the doctrine of estoppel as follows:

Section 31–11–06, N.D.C.C., provides that: "When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litiga-

---

4. The congressional policy with respect to the Motor Carriers Act is set forth in the historical note preceding 49 U.S.C. § 301. The policy is stated in the following manner: "It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act [chapters 1, 8, 12, 13 and 19 of this title], so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions;—all to the end of developing, coordinating and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense. All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy."

5. Conclusions of law 3–6, R. 492 (Record p. 492) are as follows:
   3. That the Plaintiff fully performed its obligations pursuant to the terms of the oral contract entered into between the Plaintiff and Defendant in a satisfactory and workmanlike manner.
   4. That the Defendant's acts, representations, and omissions (including the acceptance and solicitation of Plaintiff's services, and silence as to complaints, now made and tacit and expressed approval as to some of the actions of Plaintiff which constitute the grounds of such alleged complaints) successfully secured to it the continuous services of Plaintiff, which services were essential to the performance and completion of Defendant's own obligations under its prime contract, during all of which time the plaintiff believed, and had reasonable cause to believe, that such services (performed in good faith by Plaintiff) were wholly satisfactory and were being performed and furnished at an agreed price—which understanding and belief of the Plaintiff was known to Defendant, and was due to the actions, representations, and omissions aforesaid on the part of the Defendant, which were relied upon by Plaintiff.
   5. That it would be unconscionable to permit Defendant to maintain a position inconsistent with the terms and conditions of the oral contract, the performance of which is acquiesced in and the Defendant is and should be estopped from so doing.
   6. That the Defendant's position is devoid of equity.

tion arising out of such declaration, act, or omission." The effect of this section is to enact into substantive law the equitable principle of estoppel and render it cognizable in both law and equity. Neset v. Rudman, N.D., 74 N.W.2d 826. In Werner v. Werner, 74 N.D. 565, 23 N.W.2d 757, this court said: "An essential element of equitable estoppel is a representation which may consist of words, acts or silence, believed and relied upon by the party claiming the benefit of the estoppel which induced him to act or refrain from acting, to his prejudice." Rath et al. v. Armour and Company, N.D., 136 N.W.2d 142, 148. Also see; Kunick, et al. v. Trout, N.D., 85 N.W.2d 438, 448.

No useful purpose would be served by setting out herein the record which supports the conclusions of the trial court. Suffice to say they are amply supported by the evidence and the law applicable thereto.

Finally, Ets-Hokin urges that the trial court erred in awarding Maas interest from and after the invoice date. A North Dakota statute provides:

> Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt. N.D.Cent.Code § 32–03–04 (1960).

See also, Jacobson v. Mutual Benefit Health & Accident Ass'n, 70 N.D. 566, 296 N.W. 545 (1941).

The trial court having found that Maas and Ets-Hokin had entered into an express oral contract and that Maas had performed its obligations pursuant thereto, it was just and proper that interest be awarded from the invoice date.

Upon review of the entire record, the findings, conclusions and judgment of the trial court are affirmed.